## In re DELICIA B. et al.

### Nos. 99–470–Appeal.

Supreme Court of Rhode Island.

Dec. 11, 2000.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Martha K. Diamond, Pawtucket, for Plaintiff.

Catherine A Gibran, Paula Rosin, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on October 2, 2000, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The respondent-mother, Karen Battle, has appealed from a Family Court decree terminating her parental rights to her four children, Delicia, Dominique, D'Kendra, and D'Avante. After hearing counsels' arguments and considering the memoranda submitted by the parties, this Court is of the opinion that cause has not been shown. Therefore, this appeal will be decided summarily.

■ When reviewing a termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the trial justice's findings. *In re Shaquille C.*, 736 A.2d 100, 101 (R.I.1999) (mem.); *In re Jennifer R.*, 667 A.2d 535, 536 (R.I.1995); *In re Kristen B.*, 558 A.2d 200, 205 (R.I. 1989). Such findings are entitled to great weight, and this Court will not disturb them on appeal unless they clearly are wrong or if in making those findings the

trial justice misconceived or overlooked material evidence. *See In re Christina V.* 749 A.2d 1105, 1111 (R.I.2000) (per curiam).

The respondent raises two contentions on appeal. First, that her children had not been formally committed to the Department of Children, Youth, and Families (DCYF) for the full twelve-month period before the termination petitions were filed, which she claims is required by G.L.1956 § 15–7–7(a)(3); and secondly, that the trial justice erred in finding her to be an unfit parent.

We find the respondent's first argument unpersuasive. The record reveals that the respondent's children were placed in the temporary custody of DCYF on November 21, 1996. On December 1, 1997, DCYF's temporary custody became one of formal commitment. On March 23, 1998, DCYF filed the termination of parental rights petitions (TPR), which was some sixteen months after the children had been placed in the temporary custody of DCYF.

Section 15–7–7(a)(3) provides that a termination petition may be filed when:

"The child has been placed in the *legal custody or care* of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided further that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home." (Emphasis added.)

On its face, the statute permits a TPR petition to be filed twelve months after DCYF obtains "legal custody or care" over a child, without any statutory language

requiring the necessity for a formal commitment. We conclude "temporary custody" comports with the "legal care" wording of the statute. That interpretation is buoyed by examining G.L.1956 § 40–11–12.1(a),[1] which the Legislature in 1994 amended so that the twelve-month period for a dispositional hearing would begin at the time of a child's placement in the "legal custody or care" of DCYF rather than from the time of a finding of abuse, neglect or dependency. Relying in part on this amendment, the trial justice concluded that a formal commitment following a hearing and a finding of abuse, neglect or dependency was not a requirement to start the twelve-month clock of § 15–7–7(a)(3). We agree.

We essentially agreed with this interpretation when we decided *In re Christina V.* In that case, a trial justice had concluded that the 1994 amendment to § 40–11–12.1 permitted the court to consider the period of twelve months as commencing at the time the child was first placed in the care of the department rather than from twelve months following a finding of abuse, neglect or dependency after a commitment trial. *In re Christina V.,* 749 A.2d at 1108; *see also, e.g., In re Antonio G.,* 657 A.2d 1052, 1059 (R.I.1995). The trial justice in that case reasoned properly that the 1994 amendment expressed the Legislature's intent that a formal commitment was not a prerequisite necessary to start the twelve-month parental termination clock in § 15–7–7(a)(3). Although this Court did not in *In re Christina V.* expressly state that the § 15–7–7(a)(3) twelve-month clock begins to run when a child is taken and placed into the temporary care or custody of DCYF, we did implicitly approve of the trial justice's interpretation of § 40–11–12.1. *In re Christina V.,* 749 A.2d at 1108–10. We said:

program which provides services for children with disabilities * * * the department of children, youth and families shall file a motion in the family court requesting a permanency hearing on the status of the child."

---

1. General Laws 1956 § 40–11–12.1(a) provides in part: "Within a period of twelve (12) months after a child is placed in the care of the department of children, youth and families * * * and the child has resided in foster care or * * * has resided in an out-of-home

"Under § 15–7–7(a)(3), a child must have been in DCYF care or custody for at least twelve months before a TPR petition can be filed. During that time and before a TPR petition can be filed, the parents must be offered or have received services so that they can attempt to correct the situation that led to the child's placement." *Id.* at 1110.

■ Today, we hold that formal commitment following a hearing and finding of abuse, neglect or dependency is not a prerequisite for the commencement of the twelve-month period under § 15–7–7(a)(3). DCYF need prove only that the child had been legally in its temporary custody or care for a period of twelve months before the TPR petition was filed. We note in this case that the trial justice expressly found that the respondent's children had been in the care or custody of DCYF for one year and four months before the TPR petition was filed. He also found that the respondent had been offered services to correct the situation that led the DCYF to take temporary custody and that no substantial probability existed that the children would be able to return to the respondent's care within a reasonable period,

considering the ages of the children and the need for their permanent placement.

■ We reiterate here, as we did in *In re Christina V.*, 749 A.2d at 1110, that although a child may be placed in the temporary custody or care of DCYF before a formal adjudication of abuse, neglect or dependency, there is no requirement during that interim temporary custody or care period for the parent or parents to comply with reunification services or programs offered by DCYF. However, during that period, if a parent or parents are offered such services or programs to preserve or reunify the family, any refusal to cooperate with DCYF can be a factor that the Court later may take into consideration, along with other relevant factors, when determining whether to terminate parental rights pursuant to a DCYF petition filed for that purpose.

■ The respondent's second contention is also unpersuasive. She contends that because the trial justice found that the hearing evidence was insufficient to prove that her drug use and her periods of incarceration constituted grounds to support a finding of "unfitness,"[2] the trial justice could have found only "unfitness" based on

---

**2.** General Laws 1956 § 15–7–7, Termination of parental rights, provides in pertinent part:

"(a) The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

\* \* \*

(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

(i) Emotional illness, mental illness, mental deficiency, or institutionalization of the parent, including imprisonment, of such a duration as to render it improbable for the parent to care for the child for an extended period of time.

\* \* \*

(iii) The child has been placed in the legal custody or care of the department for chil-

dren, youth, and families and the parent has a chronic substance abuse problem and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide care for a child for a period of twelve (12) months due to substance abuse shall constitute prima facie evidence of a chronic substance abuse problem.

\* \* \*

(3) The child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided further that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home."

a "dirty house, a few missed appointments, and the mere passage of time."

We view the record quite differently. Although the trial justice did find that the state had failed to prove that the respondent's incarceration and narcotics involvement standing alone rose to the level of unfitness,[3] the record contains ample other evidence supporting his finding of unfitness under § 15–7–7(a)(3). That evidence discloses that under the respondent's supervision the children had missed or postponed vital medical appointments, including ones for treatment for HIV and a potentially dangerous throat condition; that one of her children had to undergo a sexual abuse evaluation; and that the children went hungry, unclothed, and dirty, and lacked adequate housing and other basic necessities. The trial justice also properly considered that DCYF had developed case plans, provided referrals, and offered services to the respondent to correct the situation that had led to the children's first being placed in DCYF"s temporary custody, but that the respondent repeatedly failed to cooperate with those offered case plans, referrals and services. The trial justice additionally found and concluded that no substantial probability existed indicating that the children would be able to return to the mother's care within a reasonable period.

From the record before us, we conclude that the evidence more than met the clear and convincing standard required to support the trial justice's finding that the respondent was unfit by reason of her conduct and by the manner of living conditions that she imposed upon the four children. All these conditions were seriously detrimental to her children, and revealed her inability to properly care for them. *See In re Ryan S.*, 728 A.2d 454, 457 (R.I.1999). The record also contains abundant clear and convincing evidence to sup-

port the trial justice's finding that termination of respondent's parental rights would be in the best interests of the four children. *See In re Nicole B.*, 703 A.2d 612, 618 (R.I.1997); *In re Kristen B.*, 558 A.2d at 203.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court granting the termination of the respondent's parental rights is affirmed, and the papers in this case are remanded to the Family Court.

Justice FLANDERS did not attend oral argument, but participated on the basis of the briefs.

---

3. The trial justice did find that the respondent was imprisoned twice—once for trafficking in narcotics and once for violating probation on a conviction of third-degree sexual assault.

The trial justice also found that the respondent sold narcotics, but that no evidence existed of a substance abuse problem.