**In re BRYCE T.**

**No. 2000–95–Appeal.**

Supreme Court of Rhode Island.

Jan. 16, 2001.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, For Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, Suzanne Barber–Pro Se, For Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

### OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on December 4,

2000, pursuant to an order that directed the parties to show cause why this appeal should not be summarily decided. The respondent mother, Suzanne B., has appealed the termination by the Family Court of her parental rights to her son, Bryce. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.[1]

Bryce was born on May 17, 1995. The respondent's parental rights to another child, Cody, previously were terminated by decree entered February 4, 1997, because of respondent's chronic substance abuse, among other reasons. *See In re Cody,* 706 A.2d 1336 (R.I.1998) (mem.).

The current case concerning Bryce was opened by the Department for Children, Youth and Families (DCYF or department) in May 1997[2] when respondent left Bryce and his older cousin in the care of a neighbor for several hours after informing the neighbor that she was leaving for five minutes to get cigarettes. In fact, respondent had gone out to drink at a bar and was involved in an automobile accident, after which DCYF filed a petition for custody of Bryce, although apparently no action was taken at that time. After this incident, respondent was referred by a DCYF caseworker to CODAC for counseling and drug screening, but she was unwilling to comply with the requirements of the program. The department removed Bryce from respondent's care on August 12, 1997, after the police were called to her home following a report that she was intoxicated and behaving erratically.

---

1. The parental rights of the putative father of Bryce were terminated by a decree entered on October 25, 1999. Only the respondent mother has appealed the Family Court judgment.

2. In 1996, respondent admitted neglect with respect to Bryce, based on her continued substance abuse. Bryce was found to be neglect-

ed and was placed in the care, custody, and control of DCYF by decree of the Family Court signed June 25, 1996, and entered on September 16, 1996, although on August 14, 1996, a DCYF social worker recommended that the case be closed and the petition be withdrawn.

Upon respondent's release from a brief incarceration on September 4, 1997, her DCYF caseworker arranged various outpatient and inpatient substance abuse treatment programs, including Talbot House, South Shore Mental Health, and Marathon Sympatico, but each program ended unsuccessfully. Problems included "noncompliant" and "disrespectful" behavior, positive tests for marijuana and cocaine, and missed scheduled visits with counselors. At trial, the Family Court justice found that respondent had admitted neglect on January 16, 1998, and that Bryce was placed in the care, custody and control of DCYF at that time.

On September 9, 1998, DCYF filed a petition to terminate respondent's parental rights to Bryce, pursuant to G.L.1956 § 15-7-7, on the bases that (1) parental rights to another child of respondent were involuntarily terminated, and she continued to lack the ability or willingness to respond to services that would rehabilitate her; (2) respondent suffered from chronic substance abuse, and her prognosis indicated that the child would not be able to return to her custody within a reasonable period; (3) the child had been placed in legal custody of DCYF for more than twelve months; and (4) the father had abandoned and/or deserted the child.

The case was scheduled for trial before a Family Court justice on August 12, 1999. On that date, respondent's court-appointed counsel from Rhode Island Legal Services (Legal Services) told the court that respondent wished to discharge her. The respondent stated that "[M]y attorney is overworked and overburdened. I asked my attorney to do several things for me on my behalf. She said no, it is not in my best interest."[3] The trial justice attempt-

ed to explain that the respondent's court-appointed attorney was well-qualified, and he tried to dissuade the respondent from discharging her. He explained that the case had been long pending at that point, that the child had been in the care of DCYF for some time, and that the court would not continue to delay. After a lengthy colloquy between respondent and the court, the attorney asked to withdraw, and the court allowed her to do so. The trial justice then ordered respondent to obtain private counsel. The respondent expressed concern that she would not be able to afford private counsel, but the judge explained that pursuant to a memorandum from the Family Court Chief Judge, he was permitted to appoint private counsel only if Legal Services or the public defender were unavailable.[4]

The respondent returned to court on September 30, 1999, without an attorney, and once again the case was continued, this time to October 7, 1999. On that date, prior to the commencement of the trial, respondent requested a court-appointed attorney. The judge again explained that because the case had been pending for some time and had been continued on numerous occasions in order for respondent to obtain counsel, he was unable to grant any additional continuances. The trial justice further explained that he could not appoint another attorney because respondent had discharged her appointed counsel from Legal Services.

The trial progressed in a somewhat abbreviated fashion, with respondent proceeding *pro se*. The Family Court justice granted DCYF's petition, and respondent's parental rights were terminated by a decree that was entered with the Family

---

3. The respondent made statements at the hearing regarding what "things" the attorney failed to do: "All I asked is for a few simple things; records that I been denied." In response, the judge explained, "[S]he might think that the records may not be helpful to your case, but may hurt it."

4. At oral argument, counsel for respondent indicated that the public defender had represented respondent in the termination of her parental rights to Cody and that respondent did not wish to be represented by the public defender in the termination of her parental rights to Bryce, although the public defender did represent respondent here on appeal.

Court on October 27, 1999. The respondent timely appealed.

The respondent argued on appeal that the Family Court justice was "wrong" in stating that he could not appoint counsel when, as here, counsel from Legal Services was ready and available, but was rejected by the client. The respondent argued that "[i]n a proceeding as serious as termination of parental rights, it is an abuse of discretion to refuse to appoint counsel if a parent has a conflict with one attorney. A second chance, at least, should be given." The respondent did not argue the merits of the termination.

The DCYF argued that the trial justice was correct in finding that respondent was unfit to parent Bryce and did not abuse his discretion in declining to appoint new counsel after respondent dismissed her appointed counsel. The department maintained that respondent had cited no authority that discussed the number of times that an indigent parent may refuse counsel who has been appointed, nor was there any authority for the proposition that a disagreement on whether an appointed attorney should subpoena records is sufficient grounds for an indigent client to discharge an attorney and request substitute counsel.

■ "When reviewing cases involving the termination of parental rights, this Court examines the record to determine whether there is legally competent evidence to support the trial justice's findings. * * * The findings of a trial justice sitting without a jury are entitled to great weight, and this Court will not disturb those findings unless they are clearly wrong or unless the judge overlooked or misconceived material evidence." *In re Daniel*, 727 A.2d 188, 190 (R.I.1999) (per curiam).

■ We first address the issue of whether substitute counsel was required in this case. We agree with the statement of Justice Stewart in *Lassiter v. Department of Social Services of Durham County, North Carolina*, 452 U.S. 18, 27, 101 S.Ct.

2153, 2160, 68 L.Ed.2d 640, 650 (1981), that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is * * * a commanding one." A majority of the Supreme Court, though indicating that in some circumstances due process might require appointment of counsel in a termination of parental rights proceeding, held that the Constitution does not require appointment of counsel in every such case. *Id.* at 31, 101 S.Ct. at 2162, 68 L.Ed.2d at 652. Despite the lack of a constitutional mandate, Rule 18(c) of the Family Court Rules of Juvenile Proceedings provides that "[a] preliminary hearing shall be held on [a petition for involuntary termination of parental rights] for the court to * * * (4) Appoint an attorney to represent the parent(s) and any person having such care or custody of such child when said parent(s) or custodian [is] unable to afford such representation." The rule, however, neither expressly provides to a parent the right to substitute counsel in the event the parent has discharged appointed counsel, nor does it preclude substitute counsel. Therefore, in our opinion, there is no mandate to appoint substitute counsel after a respondent has discharged an appointed counsel.

■ In the criminal context, in *State v. Desroches*, 110 R.I. 497, 293 A.2d 913 (1972), this Court addressed the right to counsel when a defendant had discharged appointed counsel. In that case, the defendant twice discharged the public defender and once fired a private attorney. A date was set for trial and the defendant was warned to obtain counsel. He did not and instead represented himself during a three-day trial. On appeal the defendant argued that he was denied the right to assistance of counsel in violation of the federal and state constitutions and that he was incapable of adequately defending himself. The Court wrote, "[t]he constitutional obligation to furnish counsel to an indigent defendant is discharged by the assignment of a public defender, unless the

record shows that he [or she] is not effectively representing the accused." *Id.* at 505, 293 A.2d at 918 (citing *People v. Miller*, 12 Cal.App.3d 922, 91 Cal.Rptr. 97 (1970)). Similarly, we believe that any duty to appoint counsel in a termination of parental rights case is discharged if counsel from Legal Services is appointed, provided that the record indicates that the appointed counsel effectively represented the parent. Moreover, in the criminal context, we have held that a defendant is "not privileged to have counsel of his own choice but merely to have effective counsel and a fair trial." *State v. Pope*, 414 A.2d 781, 786 (R.I.1980) (quoting with approval the trial justice). We believe this rule applies also in termination of parental rights cases.

Here, respondent knew the severity of the proceedings. Indeed, her parental rights to one child already had been terminated. Yet, she insisted on discharging her attorney on the day that trial was to begin, despite the fact that the trial justice attested to the appointed counsel's experience in handling such cases, despite the fact that he explained that she should defer to the attorney on matters such as what records should be sought, and despite warnings that she would be better served with Legal Services than the "alternative." It is our opinion that the trial justice made clear that respondent would be proceeding *pro se* if she chose to discharge her Legal Services attorney. Significantly, there was no evidence here that the attorney was not effectively representing respondent. In addition, because respondent had qualified for Legal Services, we assume that respondent also chose not to employ the public defender. Indeed, it appears from the record that no competent substitute counsel would have been able to represent respondent to her satisfaction. In any case, it is doubtful that counsel would have affected the outcome here, given respondent's chronic substance abuse problem, her failure to successfully complete treatment, and the termination of her parental rights to another child.

For all the foregoing reasons, we hold that the trial justice was not obligated to appoint substitute counsel after respondent discharged her appointed counsel. It is our opinion, however, that in cases such as the one before us, trial judges should direct that an appointed, dismissed attorney serve as stand-by counsel in the event the unrepresented party is unable to proceed *pro se* or requires assistance during trial.

Having determined that the trial justice was not obliged to appoint substitute counsel, we conclude that the trial justice was not clearly wrong, nor did he overlook or misconceive material evidence in granting the petition and terminating respondent's parental rights. In this case, the trial justice appropriately considered the relevant criteria codified in § 15–7–7 and considered all the evidence.

For the foregoing reasons, we deny and dismiss the respondent's appeal and affirm the judgment of the Family Court, to which we return the papers in the case.