### In re BRANDON A.

### No. 99–129–Appeal.

Supreme Court of Rhode Island.

April 11, 2001.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Providence, for Petitioner.

J. Richard Ratcliffe, Providence, for Respondent.

Present WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Can a judgment of default be entered against a parent who was incarcerated out of state at the hearing on the termination of his parental rights, but who was represented by counsel? This issue came before the Supreme Court on the appeal of Eric A. (respondent) from a decree of the Family Court that entered a default judgment against him for failure to appear at a hearing that terminated his parental rights and granted the petition of the Department of Children, Youth and Families (DCYF) to terminate all legal rights to his son, Brandon A. For the reasons that follow, we sustain the appeal.

### Facts and Procedural History

Brandon A. was born in July 1995 to a mother who had a history of chronic substance abuse and mental health problems. From the age of three-months old to the age of fifteen months old, Brandon and his father Eric lived with Eric's father, who was a sexual-abuse offender. At that time, the mother feigned a reconciliation with respondent and removed Brandon from the home. On the basis of neglect, DCYF petitioned the Family Court for custody of Brandon in December 1996, after Brandon's mother had a positive toxicology screen on the day her third child, Dane, was born.[1] Brandon continued to live with

his mother, during which time he was evaluated for early intervention services and appeared to be significantly delayed in his development. After placement in non-relative foster care, he was reevaluated and no longer showed such delay. In September 1997, Brandon was placed with his maternal aunt; however, at the time of the termination hearing, he was living with his maternal grandmother, who intends to adopt him.

During the family's involvement with DCYF, three case plans were developed to assist Brandon's parents in addressing their problems with chronic substance abuse, mental health, and parenting issues. Neither parent participated in the available services. The father's plan specified the goals of solving his substance abuse and legal problems, obtaining and maintaining adequate housing, refraining from allowing the children to have contact with sexual-abuse perpetrators,[2] and developing appropriate parenting skills. Although the mother had the services of a parent aide and a visiting nurse, and access to mental health and substance-abuse counseling, the situation in the home deteriorated. Brandon and his siblings were removed from the mother's custody in January 1997, and respondent contacted DCYF and arranged with the assigned social caseworker, JoAnn Eddy (Eddy), for visitation with Brandon. The biweekly visits were discontinued after three visits, following respondent's arrest in March 1997 for felony charges of breaking and entering and his incarceration in New Hampshire until November 1997. Upon his release, he was transferred to the Essex County jail in Massachusetts to face

---

1. Brandon's older sister, Katarina, was placed with the maternal grandmother, who was also appointed her legal guardian, and with whom Brandon currently resides. Dane, the child from a different relationship, was

reunited with his biological father in the summer of 1998.

2. The respondent's father and brother were identified as sexual-abuse perpetrators.

charges of raping a fourteen-year-old girl, for which he was subsequently convicted and sentenced to two and a half to three years of imprisonment at hard labor. The mother indicated in July 1997 that she was no longer interested in a case plan with the goal of reunification with her children and would consent to the adoption of Brandon and Katarina and to the reunification of Dane with his biological father.

In April 1998, DCYF petitioned the Family Court for termination of both parents' rights to Brandon, based on his placement in the custody of DCYF for more than twelve months, during which time services to correct the situation were offered, the parents' chronic substance-abuse problems rendered reunification in a reasonable period of time unlikely, and the parents abandoned and/or deserted the child. On or about September 5, 1998, while he was incarcerated in Massachusetts, respondent was personally served notice of an arraignment hearing on the termination petition, and he informed the Family Court by letter dated September 21, 1998, that he would be unable to attend the hearing scheduled for October 1, 1998, because he was scheduled for transfer to the County Jail in Dallas, Texas, to serve the remainder of his sentence. On September 30, 1998, respondent received the assistance of court-appointed counsel, who represented respondent at the October 1 hearing, at which a Family Court justice entered a denial of the allegations on behalf of the father and continued the case for termination of the mother's parental rights and for pretrial with respect to the father.

## Termination Hearing

At the termination hearing on November 20, 1998, neither respondent nor Brandon's mother was present. The mother's counsel raised no objection to DCYF's motion to enter default against her, stating that "I have made efforts to notify her at all the addresses that have been provided, and she has not contacted me back. * * * I do believe it would be in the best interest [for Brandon] to be adopted by the maternal grandmother." By contrast, counsel representing respondent objected to the entry of default against his client, explaining that "[e]ven if he were served, he is incarcerated and wouldn't be able to be here."[3] The Family Court justice ordered the entry of default against both parents and admitted into evidence the summary of facts prepared by Eddy to substantiate the termination of parental rights. Once the entry of default had been ordered by the Family Court justice, respondent's counsel did not object either to the summary of facts or to the subsequent testimony by Eddy. At the conclusion of the hearing, the Family Court justice terminated the parents' rights to Brandon.[4]

The respondent filed the instant appeal, contending that the entry of default against him was error because it deprived him of his constitutional right to meaningful participation in the termination hearing that took place during his incarceration out of state. He further argued that the Family Court's termination of his parental rights was not supported by clear and convincing evidence. Because we agree with respondent's first contention, we do

---

3. Although respondent's counsel informed the Family Court that respondent had not been defaulted before, our review of the record reveals that after a hearing on August 27, 1998, a different Family Court justice issued a decree that entered a default judgment against respondent "on the underlying neglect petition based on incarceration for child molestation as reflected by certified copy of his conviction and sentence."

4. The mother has not appealed from this termination.

not reach the merits of the termination of his parental rights.

## Entry of Default

 The respondent contended that the entry of a default judgment against him was error because his incarceration in Texas precluded his participation in the termination hearing in a meaningful manner, and thus he was deprived of his procedural due-process rights. In response, we address the question of whether the Family Court justice erred in ordering the entry of default, given that both parents, although personally absent, were represented by counsel. Our review of a Family Court justice's decision is deferential, and we " 'do not disturb the trial justice's findings of fact unless it can be shown that he or she has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong.' " *Brown v. Jordan*, 723 A.2d 799, 800 (R.I.1998) (mem.).

This Court has previously defined an appearance as "[a] coming into court *as party* to a suit, either in person *or* by attorney, whether as plaintiff or defendant." *Nisenzon v. Sadowski*, 689 A.2d 1037, 1048 (R.I.1997) (quoting Black's Law Dictionary 97 (6th ed.1990)). (Emphasis added.) Consequently, our holding in *Nisenzon* permits representation by an attorney as an alternative to a personal appearance.

 In this case, letters informing DCYF, the Court Appointed Special Attorney (CASA), and counsel for the parents of an August 7, 1997 hearing date regarding DCYF's involvement with Brandon stated that "[a]ttorney's [*sic* ] must have their clients present and witnesses on call; [a]ttorney's [*sic* ] and parties representing themselves are subject to sanctions for not complying with these guidelines." A notice summoned respondent to appear at a February 10, 1998 Family Court hearing on a DCYF petition for neglect of Brandon, directed him "personally to appear" before the court, and warned of the consequences of failure to appear as set forth in G.L.1956 § 14–1–19.[5] Notwithstanding the Family Court summons that gave notice of the obligation to appear imposed by § 14–1–19 and the possible entry of a default pursuant to Rule 18(d) of the Family Court Rules of Procedure for Juvenile Proceedings,[6] we hold that an appearance by counsel constitutes a sufficient alternative to a personal appearance by a "parent, guardian, lawful custodian, or other person" summoned to a preliminary hearing. Section 14–1–19. Consequently, the Family Court justice's entry of default against respondent who was represented by counsel was clearly erroneous.

 We note that counsel for respondent did not request that the Family Court delay the proceedings before the entry of default was ordered, nor did he raise any objections to the admission of testimony at the hearing or to other evidence submitted as the termination hearing progressed. Neither respondent nor his attorney sought a continuance, the opportunity to appear personally, by deposition, or tele-

---

5. Pursuant to G.L.1956 § 14–1–19,

 "[a]ny parent, guardian, lawful custodian, or other person having the care and control of a child, who willfully refuses or neglects to appear in court in accordance with any summons served on him or her, may be fined not exceeding one hundred dollars ($100), or be imprisoned for not more than three (3) months."

6. Rule 18(d) of the Family Court Rules of Procedure for Juvenile Proceedings provides:

 "*Default.* If any parent, guardian or other person having custody of a child shall, after due notice, fail to appear at the preliminary hearing, the court may enter a default and proceed then or at a subsequent date to receive proof and enter judgment."

phone, or the opportunity to submit interrogatories or to cross-examine the witness at a later date. Although it is well established that "we shall not consider on appeal issues that were not presented to the trial justice for his or her determination," *State v. Clark*, 754 A.2d 73, 77 (R.I.2000) (citing *State v. Tempest*, 651 A.2d 1198, 1216 (R.I.1995)), in this case, counsel for respondent may well have believed that it was futile to argue subsequent to the ordering of the default. His failure to object to the introduction of evidence against respondent or to cross-examine Eddy may have been the result of counsel's belief that the case had terminated at that point.

 This Court has repeatedly recognized that "[n]atural parents have a fundamental liberty interest in the care, custody and management of their child that does not evaporate if they are not model parents or have lost temporary custody of their child." *In re Antonio G.*, 657 A.2d 1052, 1057 (R.I.1995) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599, 606 (1982)). Consequently, parents are entitled to procedural due process before the termination of their parental rights. *Santosky*, 455 U.S. at 753–54, 102 S.Ct. at 1394–95, 71 L.Ed.2d at 606. It is well settled, of course, that the right of confrontation is not absolute, *see Barber v. Page*, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255, 258 (1968), and is limited to criminal proceedings. *Austin v. United States*, 509 U.S. 602, 608 n. 4, 113 S.Ct. 2801, 2804 n. 4, 125 L.Ed.2d 488, 496 n. 4 (1993). Consequently, respondent had no absolute right to be physically present at the termination hearing. *See Lassiter v. Department of Social Services*, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158–59, 68 L.Ed.2d 640, 648 (1981) (termination of parental rights is a civil and not a criminal proceeding).

The respondent was notified in advance of the termination hearing and, pursuant to Rule 18(c), he was represented by counsel appointed by the Family Court upon respondent's request and affidavit of indigence. Counsel had contacted respondent several weeks before the hearing, but apart from a single phone call, there is no evidence that respondent made an effort to correspond with counsel or to participate in the preparation of the proceedings. Although there is no evidence that respondent pursued the opportunity to aid in the preparation of his case once he was transferred to Texas,[7] he had previously attempted to participate in the termination proceedings when he was incarcerated in Massachusetts. Moreover, our review of the record reveals that while incarcerated in New Hampshire in August 1997, respondent sent handwritten requests for appointment of counsel and for the issuance of a writ of habeas corpus to enable him to attend a case plan review. A different Family Court justice, in May of 1998, directed "DCYF to determine a method to bring [respondent] to Court by Habeas," apparently to attend a case-management conference while the termination petition was pending. In September 1998, the Family Court justice who eventually terminated respondent's parental rights ordered the issuance of such a writ for the October 1, 1998 hearing while respondent was incarcerated in Massachusetts.

It is our opinion that when, as in this case, an effort was made to ensure respondent's presence at the termination hearing through the issuance of a writ of habeas corpus, the record must show at least the reason for a respondent's failure to appear.

7. There was no evidence or allegation by respondent that he was denied communication with his counsel by Texas authorities. His attorney stated at the termination hearing:

"He called my office once. I was not there. I have not spoken to my client. As I stated earlier, he had a letter and he has not corresponded with me and he is not here today."

If a respondent wishes to be present at the proceedings but a personal appearance is not possible, the Family Court justice should ascertain whether—in light of due-process considerations—alternative means of participation in the proceedings can be afforded to a respondent. The Family Court justice should then direct an attorney representing an out of state incarcerated parent to inform the client of the possibility to participate by deposition, telephone, or with the help of transcripts and communication with counsel.

## Conclusion

Therefore, we do not reach the merits of the termination of the respondent's parental rights. Because the respondent was represented by counsel at the termination hearing, the entry of a default judgment based on the lack of a personal appearance was clearly erroneous. Consequently, the appeal is sustained, the judgment of the Family Court is vacated, and the papers of this case are remanded to the Family Court for a hearing on the termination of the respondent's parental rights.[8]

---

**8.** At the time of oral argument, the respondent had been released from prison and was living in Maine.