In re GINGER G.

No. 98–509–Appeal.

Supreme Court of Rhode Island.

June 13, 2001.

Frank P. Iacono, Jr./Thomas J. Corrigan, Jr., Melissa Grant, For Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, For Defendant.

Present WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on May 8, 2001, pursuant to an order that directed the parties to show cause why this appeal should not be summarily decided. The respondent mother, Melissa G. (respondent), has appealed the termination by the Family Court of her parental rights to her daughter, Ginger.[1] After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

### Facts and Procedural History

Ginger was born on December 10, 1989. She was committed to the custody of the Department of Children, Youth and Families (DCYF) on April 25, 1996, when respondent admitted to dependency. On July 22, 1997, DCYF filed a termination of parental rights petition, contending that respondent was unfit because of her mental and emotional illness, that she suffered from chronic substance abuse problems, and that Ginger had been placed with DCYF for more than twelve months, during which time respondent had been offered services to correct the situation that led to Ginger's placement.

Although respondent had been present during the pretrial hearing at which the date and time of the termination hearing was determined, she did not appear on that day, April 9, 1999. The Family Court justice inquired about respondent's absence and whether she had been aware of the court date. At that time, respondent had the benefit of a guardian ad litem appointed by a Family Court justice about three months earlier, after DCYF requested the appointment. The guardian ad litem stated that she had informed respondent about the upcoming hearing by letter and that when she tried to telephone respondent on April 5, 1999, she was told that respondent had moved. The assigned DCYF caseworker acknowledged that she had spoken to respondent approximately a week before and had reminded her of the date and time of the hearing. She also related that respondent was told of the hearing by the Kent County Mental Health case manager on April 7, 1999.

Absent an objection or request for a continuance by respondent's guardian ad litem, the Family Court justice granted DCYF's request to proceed in respondent's absence. Extensive testimony was given by the DCYF case worker, and various records from St. Joseph Hospital and Kent County Mental Health Center were

---

1. Ginger's putative father was previously defaulted after notice by advertisement, and his parental rights were terminated on January 8, 1998.

admitted as full exhibits without objection by the guardian.[2] Following the DCYF's presentation of its case at the termination hearing, the Family Court justice offered respondent's guardian ad litem an opportunity to question any witnesses, but the guardian ad litem declined, stating that "I would just like to clarify that my role here is as guardian ad litem for Melissa. She is acting as her own attorney and entered her own appearance. I just wanted to clarify what my rol[e] is and responsibilities are."[3] After the termination hearing, respondent attended a subsequent hearing, on April 16, 1999. At this hearing, the Family Court justice noted that respondent had been afforded legal representation by the Public Defender's office and Rhode Island Legal Services, both of which she had terminated, and that only her guardian ad litem had been present at the termination hearing. In light of the evidence presented by the DCYF, the Family Court justice concluded that respondent was unfit by reason of mental illness to care for Ginger and that her illness rendered it improbable for her to care for the child for an extended period. Consequently, he terminated respondent's parental rights. The respondent then addressed the court and acknowledged that she had missed the trial date because she "believed it was 2 o'clock instead of 9 o'clock," although she did not offer any evidence that she was prevented from attending the termination hearing. The respondent then disputed much of the caseworker's testimony. Notwithstanding her presentation, the Family Court justice ordered the entry of the decree. The respondent appealed.

### Absence at the Termination Hearing

■ In her appeal, respondent contended that the Family Court justice erred in continuing the termination proceedings in her absence and that he should have made "*some* inquiry into her whereabouts and the reason for her absence." The respondent argued that she had a "right to participate fully in a hearing on the allegations of the [involuntary termination of parental rights] petition," pursuant to Rule 18(c)(5) of the Family Court Rules of Juvenile Proceedings, and she asked that the termination decree be vacated and the case be remanded for a trial with her participation. Because we agree with respondent on this issue, we do not address the merits of this case and consequently do not review the findings of fact made by the Family Court justice.

■ In consideration of their "fundamental liberty interest in the care, custody, and management of their child," *In re Antonio G.*, 657 A.2d 1052, 1057 (R.I.1995) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599, 606 (1982)), parents are entitled to procedural due process before the termination of their parental rights. *Santosky*, 455 U.S. at 753–54, 102 S.Ct. at 1395, 71 L.Ed.2d at 606. Because the right of confrontation is not absolute, *Barber v. Page*, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255, 258 (1968), and is limited to criminal proceedings, *Austin v. United States*, 509 U.S. 602, 608 n. 4, 113 S.Ct. 2801, 2804 n. 4, 125 L.Ed.2d 488, 496 n. 4

**2.** Although the Family Court justice apparently had the benefit of testimony by Ginger's therapist, that part of the transcript was not submitted in the record on appeal.

**3.** The guardian ad litem had appeared with respondent for a pretrial hearing on February 4, 1999, and expressed respondent's wish to be represented by counsel. The respondent, however, stated: "Oh, no. That's okay. We've already been through this. This is fine, just you representing me." The guardian ad litem then told the court that respondent was "ready to go forward."

(1993), respondent had no absolute right to be physically present at the termination hearing. *See Lassiter v. Department of Social Services*, 452 U.S. 18, 25–28, 101 S.Ct. 2153, 2158–59, 68 L.Ed.2d 640, 648–49 (1981) (termination of parental rights is a civil and not a criminal proceeding).

■ Although the termination of parental rights is a civil, not a criminal proceeding, *id.*, the termination of parental rights is a significant event in which a parent's due process rights reasonably should be protected. Here, pursuant to Rule 18(c)(4), respondent initially was represented by the Public Defender's office, the services of which she terminated. She then was referred to Rhode Island Legal Services. The respondent again dismissed legal counsel provided to her and entered her appearance *pro se* on September 10, 1998, indicating that she would represent herself in the termination proceedings.

■ We have held that "there is no mandate to appoint substitute counsel," once a respondent has discharged appointed counsel, *In re Bryce T.*, 764 A.2d 718, 721 (R.I.2001) (per curiam). However, we also suggested that "trial judges should direct that an appointed, dismissed attorney serve as stand-by counsel in the event the unrepresented party is unable to proceed *pro se* or requires assistance during trial." *Id.* at 722. Furthermore, in a case in which a respondent asks to attend a termination hearing personally but is prevented from doing so, "the Family Court justice should ascertain whether—in light of due process considerations—alternative means of participation in the proceedings can be afforded to a respondent." *In re Brandon A.*, 769 A.2d 586, 591 (R.I.2001) (holding that an out-of-state incarcerated parent should be given an opportunity for reasonable participation in a hearing on the termination of his parental rights).

Although it was unclear in this case why respondent did not appear at the termination hearing, it was known to the Family Court justice and to all parties at the hearing that respondent had a long history of mental illness and substance abuse that frequently resulted in hospitalizations. Moreover, respondent recently had informed her social services caseworker that she intended to discontinue her court-ordered medication after expiration of the order without which her mental state was known to deteriorate. Given those circumstances, it could not be assumed that respondent's absence from the hearing was entirely voluntary.

We have held that a parent was adequately represented by her guardian ad litem although the parent's attorney was permitted to withdraw when "[d]uring the course of the hearing the guardian ad litem was present, examined witnesses and took other steps to represent his absent ward." *In re John P.*, 458 A.2d 1085, 1085 (R.I.1983) (per curiam). Unlike *John P.*, respondent's guardian ad litem in the instant case remained entirely passive, and she indicated that it was her understanding that her responsibilities as guardian did not include her acting as respondent's legal representative.

■ In cases such as this, wherein the *pro se* parent failed to appear, no attorney represented the parent, and the guardian ad litem did nothing to protect the absent parent's rights, a Family Court justice must make findings on the reasons why the respondent in a termination of parental rights hearing was absent. We previously have stated that "it is the obligation of a justice of the Family Court, or of any court, to see that truth is as fully ascertained as circumstances permit." *In re John P.*, 458 A.2d at 1086. At a minimum, a Family Court justice should inquire about the status or position of the parent

and the reason for his or her absence to ascertain whether the non-appearance was voluntary or non-voluntary. Therefore, we remand this case to the Family Court for a hearing in which the respondent has the opportunity to present testimony in evidence. Moreover, a reasonable effort should be made to allow the witnesses in the April 9, 1999 hearing to be cross-examined by the respondent. It lies within the sound discretion of the Family Court justice to determine whether additional testimony should be taken at that time or whether the original transcript may be relied upon.

## Conclusion

For the foregoing reasons, we sustain the respondent's appeal, and the decree terminating the respondent's parental rights is vacated. The case is remanded to the Family Court, to which the papers of this case may be returned for further proceedings consistent with this opinion.