**In re Chaselle S.**

**No. 2001–102–Appeal.**

Supreme Court of Rhode Island.

June 4, 2002.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Providence, for Plaintiff.

Kelly Monteiro, Paula Rosin, David M. Shein, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent father has appealed a Family Court decree terminating his parental rights to his daughter, Chaselle S.[1] This case came before the Supreme Court for oral argument on May 14, 2002, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. Having heard the oral arguments of counsel and having reviewed the record in the case and the memoranda of the respondent, the Department of Children, Youth and Families (DCYF or the department), and the child's guardian *ad litem,* we deny and dismiss the respondent's appeal and affirm the judgment of the Family Court.

On appeal, respondent has challenged the Family Court justice's application of G.L.1956 § 15–7–7(a)(3), under which respondent's parental rights were terminated. First, he argued that the Family Court justice erred in finding that DCYF is not required to provide twelve months of services and case plans before initiating a termination petition under § 15–7–7(a)(3).

---

1. The parental rights of the child's mother also were terminated, but she did not file an appeal.

In this case, DCYF took temporary custody of Chaselle on April 2, 1999, when she was three days old. After respondent questioned his paternity in May 1999, the department declined to provide services to respondent until August 1999, when his paternity was affirmatively established. The termination petition was filed approximately nine months later, on May 9, 2000.

The statute requires the Family Court to find by clear and convincing evidence that, *inter alia:*

> "The child has been placed in the legal custody or care of [DCYF] for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed * * *." Section 15–7–7(a)(3).

After finding that Chaselle had been in DCYF's care for at least twelve months, the Family Court justice stated that he did not "interpret [the statute] to mean that case planning with one or both of the parents has to go on for that 12–month period" when, as here, the parent is responsible for some or all of the delay. We agree with the Family Court's interpretation of the statute.

■■■ When the language of a statute is clear and unambiguous, we are bound to give that language its plain and ordinary meaning. *Cummings v. Shorey*, 761 A.2d 680, 684 (R.I.2000). The plain language of § 15–7–7(a)(3) requires only that the justice find that "the parents were offered or received services to correct the situation which led to the child being placed." The statute does not require that parents be offered services for the entire period during which the child is in DCYF custody, and we decline to read such a requirement into the statute. Our statement in *In re Delicia B.*, 762 A.2d 1201, 1204 (R.I.2000) (per curiam) (citing *In re Christina V.*, 749 A.2d 1105, 1110 (R.I.2000) (per curiam))

that parents must be offered or have received services "during" DCYF's twelve months of custody is not equivalent to imposing a requirement that services be rendered for a continuous twelve-month period before a petition for termination can be filed.

■■■ In the case before us, DCYF failed to offer services for a twelve-month period, in part because respondent initially questioned his paternity. It is our opinion that § 15–7–7 does not require corrective services during the time that a putative parent's biological relation to the child is in question. The Family Court justice noted that requiring DCYF to offer twelve months of services when paternity has been questioned could permit a putative parent unilaterally to delay case planning, thereby leaving the child without permanency by postponing the running of the twelve-month period set forth in § 15–7–7(a)(3).

The respondent correctly argued that G.L.1956 § 40–11–7.1(b)(7), (c)(1) and (c)(3) can alleviate the potential problem of a parent prolonging the twelve-month period at the last minute. The provisions of § 40–11–7.1 relieve DCYF of the obligation to make reasonable efforts to strengthen the parent-child relationship when a parent executes a denial of paternity form or fails to appear in court, but the section does not purport to be an exclusive means of relieving DCYF of the obligation in § 15–7–7(a)(3) that "the parents were offered or received services to correct the situation which led to the child being placed."

■■■ The respondent also argued that, if he was not to be treated as a father for purposes of DCYF services until his paternity was established in August 1999, then he should not be treated as a "parent" from whose custody his child was removed

until that date. On this basis, respondent argued that the justice erred in finding that Chaselle had been in the care and custody of DCYF for twelve months prior to the May 2000 termination proceeding, as required by § 15–7–7(a)(3). As we noted above, the statute is not contingent upon a child's removal from a parent for twelve months, but rather, rests upon "[t]he child [having] been placed in the legal custody or care of [DCYF] for at least twelve (12) months," § 15–7–7(a)(3), "before the [termination of parental rights] petition was filed." *In re Delicia B.*, 762 A.2d at 1204. The twelve-month period here ran from the time Chaselle was placed in the temporary custody of DCYF in April 1999—thirteen months before the termination proceeding—irrespective of whether respondent was considered the child's father during that time.

■ Finally, respondent argued that the Family Court justice erred in finding that there was no substantial probability that the child would "be able to return safely to the parents' care within a reasonable period of time," as § 15–7–7(a)(3) requires. It is well established that when reviewing a Family Court decree terminating a parent's rights, "the trial justice's findings are entitled to great weight and shall not be disturbed unless the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence. * * * Consequently we examine the record to determine whether any legally competent evidence exists to support the trial justice's findings." *In re Kelly S.*, 715 A.2d 1283, 1288 (R.I.1998).

Here, in determining that respondent would not be able to care for Chaselle within a reasonable period, the Family Court justice relied heavily on a psychological evaluation of respondent by John P. Parsons, Ph.D. (Parsons), whose report concluded in part that "[d]ue to the complexity, chronisity [*sic*] and severity of [respondent's] problems, it is highly unlikely that he will ever be able to safely, effectively and independently parent his daughter."

■ There is no evidence of any fault on the respondent's part in this case. We agree with the trial justice that this is a "troubling case" in which the father tried to the best of his ability to parent Chaselle. The leaders of respondent's parenting course recommended a twenty-four-hour caregiver to assist the respondent in parenting Chaselle, a plan that would inevitably require multiple caregivers for an indefinite time. On balance, respondent's substantial problems set forth in the record, the statutory provisions, and the best interests of the child favor the termination of respondent's parental rights. In accordance with our well-settled standard of review, because we perceive no clear error or misconception of the evidence, we decline to overturn the Family Court's finding that the respondent would not likely be able to care for Chaselle within a reasonable period.

Therefore, we are constrained to concur with the Family Court justice who, relying on the best interests of the child as the paramount consideration, did not err in terminating the respondent's parental rights. Accordingly, we deny and dismiss the appeal and affirm the judgment of the Family Court, to which we return the papers in the case.