**In re JONATHAN P. et al.**

**No. 2001–65–Appeal.**

Supreme Court of Rhode Island.

April 8, 2003.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, PA, for Plaintiff.

J. Richard Ratcliffe, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent, Julio A. (Julio or respondent), appeals from a Family Court decree terminating his parental rights to his two children, Jonathan and Mercedes. This case came before the Supreme Court for oral arguments on January 22, 2003, following an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Having reviewed the record and the parties' briefs, and having considered the oral arguments, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. For the reasons indicated below, we affirm the decree of the Family Court justice.

On March 31, 1999, the Department of Children, Youth and Families (DCYF or department) acquired temporary custody of Jonathan and Mercedes after their mother sought psychiatric treatment at a hospital and claimed that she no longer could provide care for her children. The mother later voluntarily terminated her parental rights. At that time, Jonathan was just over one year old and Mercedes was barely two months old. Julio, the children's natural father, contacted the department one week later and set up a meeting to discuss his children's situation. Representatives of DCYF explored Julio's criminal and DCYF background and provided a psychological examination, which Julio voluntarily attended.

The Bureau of Criminal Information background check revealed charges including drug possession, larceny, domestic violence and sexual assault. In fact, Julio pled guilty to a charge of assault against Jonathan's and Mercedes's mother. A DCYF background check indicated that Julio was the subject of an investigation for child molestation. The psychological examination resulted in a diagnosis of a tendency towards substance and physical abuse, borderline intellectual functioning and a personality disorder with paranoid and self-defeating features.

A representative of the department formulated three case plans for Julio, all with the ultimate goal of reunification. Those case plans originated on May 28, 1999, November 18, 1999, and May 18, 2000, and listed the following objectives for Julio: (1) maintain a substance-free lifestyle, (2) provide a safe and stable home for himself and his children, (3) avoid reoffending, (4) cooperate with visitation plans, and (5) prevent domestic disputes or violence from affecting the children. Julio signed the first of these three case plans. The department prepared the last two case plans when Julio was in prison and it sent the plans to him, but Julio never returned them. These case plans called for substance abuse and domestic violence counseling and required Julio to follow the recommendations resulting from his psychiatric evaluation. Julio failed to adhere to many of the conditions and stipulations of all three case plans.

In June 1999, Julio was arrested and charged for an incident that occurred in Massachusetts in 1994. On October 2, 2000, he pleaded guilty to the charges relating to that arrest: four counts of indecent assault and battery on a child under fourteen and four counts of rape of a child

under sixteen. He was sentenced to five years in prison and ten years of probation upon release. In October 1999, he admitted that he neglected his children. Exactly one year after his arrest, Julio received service of a summons concerning petitions for termination of his parental rights to Jonathan and Mercedes.

The petitions alleged parental unfitness pursuant to G.L.1956 § 15–7–7(a)(2)(i) (incarceration), § 15–7–7(a)(2)(ii) (cruel or abusive conduct), § 15–7–7(a)(2)(iii) (chronic substance abuse), § 15–7–7(a)(3) (child in DCYF custody for twelve months), and § 15–7–7(a)(4) (abandonment). A trial commenced on November 17, 2000. Julio was not present because of his imprisonment.

Before trial, Julio's counsel filed a motion for a continuance, a motion for an independent psychological evaluation, and a motion to take his own deposition. The trial justice denied Julio's motion for a continuance [1] and continued the motion for an independent psychological examination until after the state's psychologist testified. The trial justice also denied Julio's motion for a deposition but permitted him to submit an affidavit at the close of the state's case. Julio, however, was not permitted to review the transcripts reflecting what had transpired in his absence. After the state's psychologist testified, the trial justice found no bias and denied Julio's motion for an independent examination. On November 22, 2000, the trial justice determined that there was clear and convincing evidence that Julio was unfit and terminated his parental rights. A final decree was entered on December 15, 2000. The respondent timely appealed.

When reviewing a Family Court decree terminating a parent's rights, we accord the trial justice's findings great weight and will not disturb those findings unless they are clearly wrong or unless the trial justice overlooked or misconceived material evidence. *See In re Jason L.*, 810 A.2d 765, 767 (R.I.2002) (per curiam). "Consequently, we examine the record to determine whether any legally competent evidence exists to support the trial justice's findings." *Id.* (quoting *In re Chaselle S.*, 798 A.2d 892, 895 (R.I.2002)).

The respondent contends that (1) the trial justice failed to afford him a meaningful opportunity to present evidence to the Family Court because he had no access to transcripts before making his affidavit and, besides the lack of access to the transcripts, he had no opportunity to consult with his attorney before cross-examination of the state's witnesses; and (2) the trial justice erred in refusing to grant his motion for an independent psychological evaluation because Julio believed that the finding of unfitness rested in part on his psychological condition.

We turn to *In re Brandon A.*, 769 A.2d 586 (R.I.2001), for guidance on respondent's first contention. In that case we concluded that a parent who is incarcerated in another state may substitute personal appearance with appearance of counsel when a personal appearance is impossible. *Id.* at 589. When it is not possible, "the Family Court justice should ascertain whether—in light of due-process considerations—alternative means of participation in the proceedings can be afforded to a respondent." *Id.* at 591. This Court indicated that participation by "deposition, telephone, or with the help of transcripts and communication with counsel" are all

---

1. Julio's counsel renewed his motion for a continuance just before trial so that respondent could be present, and the trial justice again denied it, stating that "[t]here comes a time when these children have got to have some permanency, and we'll decide now."

acceptable forms of participation that protect respondent's due process rights. *Id.* Two months later, this Court interpreted *In re Brandon A.* to mean that "an out-of-state incarcerated parent should be given an opportunity for reasonable participation * * *." *In re Ginger G.*, 775 A.2d 255, 258 (R.I.2001).

The prison in which Julio was incarcerated would have allowed a deposition or would have allowed Julio a once-a-day, thirty-minute telephone conversation with his attorney. In response to Julio's motion for a deposition, the trial justice stated:

"I can't think of any reason why the state should pay for the taking of a deposition in Concord, Massachusetts by a man who has been found guilty of molestation who has already served one year and has two years more to go and there's a termination based upon an allegation that he is in prison for such a period of time that makes it unlikely that he would ever be able to father this child." [2]

He then asked how any of those circumstances would change with the filing of a deposition, and upon Julio's counsel's concurrence that no meritorious argument would come out of a deposition, the trial justice allowed Julio to participate by submitting an affidavit. Furthermore, the trial justice refused to grant Julio access to a transcript to prepare his affidavit stating "[y]ou are not [getting a transcript] because I am not dragging this out for months."

■ The trial justice properly permitted the use of an affidavit over a deposition because counsel agreed to the utility of the affidavit over that of a deposition. In addition, the trial justice's refusal to grant the use of transcripts for making that affidavit was reasonable. Our precedent indicates that an incarcerated parent defending against a petition for termination of parental rights need only be afforded reasonable participation in that hearing. *See In re Ginger G.*, 775 A.2d at 258; *In re Brandon A.*, 769 A.2d at 591. While *In re Brandon A.*, 769 A.2d at 591, provides that participation by "deposition, telephone, or with the help of transcripts and communication with counsel" are acceptable forms of alternate participation, this list is by no means exclusive.[3] The standard is reasonable participation by the incarcerated parent in light of the circumstances and issues presented by the case in question.

The trial justice in this case did not have the benefit of either *In re Brandon A.* or *In re Ginger G.*, because both cases were decided after Julio's hearing. Now, however, armed with the standard as articulated in those two cases, we invite and encourage trial justices to evaluate the minimal standards required on a case-by-case basis. In this case, the use of an affidavit coupled with communication with counsel provided Julio with reasonable participation under the circumstances.

■ The respondent's second contention, that the trial justice erred in refusing

---

**2.** Julio's attorney indicated that Julio would probably only have to serve three of his five year sentence if he maintained good behavior.

**3.** The language used in *In re Brandon A.*, 769 A.2d 586 (R.I.2001) regarding the different possibilities for reasonable participation is misleading. Specifically, it says that the client should be informed of "the possibility to participate by deposition, telephone, or

with the help of transcripts and communication with counsel." *Id.* at 591. The conjunctive "and" used between "with the help of transcripts" and "communication with counsel" was misplaced; we should have used the disjunctive "or." Therefore, communication with counsel does not require the use of transcripts.

to grant his motion for an independent psychological evaluation, is without merit. Rule 35(a) of the Family Court Rules of Procedure for Domestic Relations explains that a motion for an order for a mental or physical examination may be granted only "for good cause." *See also In re Christina V.,* 749 A.2d 1105, 1112 (R.I.2000). We will uphold the trial justice's findings concerning good cause unless he abused his discretion. *See id.*

Julio asserts that the appointment of a mental health expert was necessary to his defense to contradict the state's psychologist and to aid in preparing to cross-examine that expert. He asserts that failure to grant his motion for an independent psychological evaluation violated his procedural due process rights. We disagree.

The trial justice gave Julio's counsel the opportunity to show prejudice or bias of the state's psychologist, and he failed to do so. In fact, Joseph Parsons, Ph.D., (Dr. Parsons), the state's psychologist, received $800 to $900 less for his work for DCYF than for private patients. Furthermore, DCYF cases make up only ten to twelve percent of the evaluations he performed each year. These facts indicate that Dr. Parsons does not benefit financially by testifying for DCYF, nor does he rely on DCYF to supply him with a substantial number of patients; in fact, Dr. Parsons could make more money if he avoided DCYF cases. In addition, Julio voluntarily agreed to see Dr. Parsons for an evaluation. As a result, the trial justice did not abuse his discretion in finding that respondent failed to show good cause and that he was not entitled to a state-financed, independent psychological evaluation.

■ Finally, and most importantly, even if Julio were diagnosed as psychologically healthy, his criminal background, including child sexual abuse charges, chronic substance abuse, current incarceration and long-term sentence, admitted neglect of the children at issue and failure to comply with numerous DCYF case plans constituted clear and convincing evidence of respondent's unfitness as a parent. In fact, the trial justice indicated that he was not sure whether he needed Dr. Parsons's evaluation given the fact that Julio was incarcerated and serving time for child sexual abuse. Julio's psychological state was not the primary basis of the termination, as was reflected by the various statutory sections under which the department sought termination. We conclude that this termination proceeding was not procedurally flawed, and that the Family Court justice's ultimate decision to terminate Julio's parental rights was supported by legally competent evidence.

**Conclusion**

Accordingly, the respondent's appeal is denied and the decree of the Family Court is affirmed. The papers of the case are remanded to the Family Court.