**In re RYAN S.**

**No. 98–402–Appeal.**

Supreme Court of Rhode Island.

April 28, 1999.

Frank P. Iacono, E. Greenwich, Thomas J. Corrigan, Jr., Providence, for Plaintiff.

Kelly Monteiro, Paula Rosin, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent, Jean S. (mother), appeals from a Family Court decree terminating her parental rights to her son, Ryan, who was born on February 1, 1987.[1] She claims that the trial justice erred in finding that the Department of Children, Youth, and Families (DCYF) made reasonable efforts to reunite her with her son, especially because DCYF allegedly failed to provide her with adequate visitation. Following a prebriefing conference, this Court directed the mother to show cause why we should not decide the issues raised in this appeal summarily. No such cause having been shown, we proceed to resolve her appeal at this time.

DCYF first became involved in this matter in June 1995, following allegations that the mother neglected her son and that she had been using drugs. During DCYF's initial assessment, the mother was less than cooperative, refusing to allow a DCYF caseworker into her home and yelling at her. Given this hostile behavior, the caseworker suspected that the mother may have had mental-health problems. At a later meeting at a DCYF

---

1. Ryan's father is deceased.

office, the mother, in Ryan's presence, became so enraged with the caseworker and her supervisor that she threatened to kill the supervisor. Following this incident, DCYF obtained an ex-parte order and removed Ryan from the mother's home.

In October 1995, the Family Court committed Ryan to DCYF's care, custody, and control. Thereafter, DCYF prepared a case plan which recommended that the mother attend Kent County Mental Health for a psychiatric and psychological assessment and that she attend parenting classes. But when a caseworker attempted to review the case plan with the mother at a scheduled visit with Ryan, the mother again became angry and threatening, while expressing her unwillingness to cooperate with services at Kent County Mental Health. In November 1995, the Family Court suspended visitation because of the mother's vituperative behavior during visits with her son and because of her refusal to obtain the recommended treatment for her problems.

Although she eventually completed the recommended parenting classes and continued to cooperate in other ways with DCYF, the mother, during a scheduled visit with Ryan in March 1996, again became angry and verbally abusive towards the DCYF worker, forcing the worker to terminate the visit after engaging in a brief struggle with the mother. Following this incident, the Family Court suspended further visitation. Ultimately, the mother agreed to undergo a psychiatric evaluation at Kent County Mental Health, but then refused to follow the recommendations of the mental-health professionals who reviewed her case. At DCYF's request, Dr. Ira Gross (Dr. Gross), a psychologist, also performed a psychological evaluation on the mother in March 1996. Notwithstanding the fact that the mother was "marginally cooperative" with the evaluation, Dr. Gross diagnosed her as having a paranoid-personality disorder. He presented several recommendations that the mother would have to follow in order to reunify with her son. Specifically, he recommended that the mother agree voluntarily to be in treatment for more than a year, that she take medication to reduce symptoms that accom-

pany her behavior, and that she abstain from alcohol and drugs.

Nevertheless, on December 24, 1996, DCYF filed a termination-of-parental-rights petition, alleging that (1) the mother was unfit by reason of emotional and mental illness, mental deficiency, or institutionalization, including imprisonment, of such duration to render it improbable for the mother to care for the child for an extended time; and (2) the child had been in DCYF custody or care for at least twelve months, and although DCYF offered the mother services to correct the situation that resulted in the child's DCYF placement, no substantial probability existed that the child would be able to return to the mother's care within a reasonable time, considering the child's age and need for a permanent home. *See* G.L.1956 § 15–7–7(a)(2)(i) and (a)(3).

Following his review of the testimony and documentary evidence introduced at trial, a Family Court justice found that the mother suffered from a paranoid-personality disorder that required medical treatment and medication. He also found that the mother had "repeatedly refused to accept the mental health services that were offered to her." He further stated that:

"[i]n that the mother absolutely repeatedly refused to accept the mental health services recommended by the health care professionals, she clearly and convincingly demonstrated her unwillingness to work toward reunification."

The trial justice concluded that DCYF had made reasonable efforts to provide the mother with the medical treatment and medication necessary to reunify her with her son. As a result, he granted the petition and terminated the mother's parental rights. A decree reflecting his decision entered, and the mother filed this appeal.

The mother contends on appeal that the trial justice erred in finding that DCYF made reasonable efforts toward reunification. In support of this contention, she first argues that DCYF failed to "consult with [her] and to cooperate with her in planning her [psychiatric] services" because DCYF insisted that the mother attend Kent County Mental Health for services. This requirement, ac-

cording to the mother, was "unnecessary and unreasonable." However, in light of the evidence presented to the trial justice concerning the mother's history of mental-health problems as marked by her ireful intransigence, we do not consider this argument persuasive. The evidence indicated that the mother underwent both a psychological and psychiatric evaluation, which recommended continued treatment, medication, and counseling. Despite the recommendations of various mental-health professionals, the mother consistently objected to and/or refused to comply with these services. Moreover, she never suggested that she would comply with some alternative treatment plan that did not involve Kent County Mental Health. In addition, the mental-health professionals who were called upon to evaluate this situation were consistent in noting that the mother's recalcitrance in accepting treatment was a major barrier to reunification with her son.

In cases involving the termination of parental rights, the Family Court must balance the interests of the state, the parents, and the minor child or children. *See In re Kenneth*, 439 A.2d 1366, 1369 (R.I.1982). Before granting a termination petition, DCYF must convince the court by clear and convincing evidence that it made reasonable efforts to encourage and strengthen the parental relationship, *see id.*, and that the parent is unfit, *see In re Kristina L.*, 520 A.2d 574, 579 (R.I.1987). See also § 15–7–7 (setting forth requirements to terminate parental rights). When reviewing such cases, this Court examines the record to determine whether legally competent evidence exists to support the trial justice's findings. *See In re Jennifer R.*, 667 A.2d 535, 536 (R.I.1995). Such findings are entitled to great weight, and this Court will not disturb them on appeal unless the findings are clearly wrong or the trial justice misconceived or overlooked material evidence. *See id.*; *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989).

" 'Reasonable efforts' is a subjective standard subject to a case-by-case analysis, taking into account, among other things, the conduct and cooperation of the parents." *In re Nicole B.*, 703 A.2d 612, 618 (R.I.1997). Our review of the record in this case indicates that legally competent evidence does exist to support the trial justice's findings with respect to DCYF's reasonable efforts. The evidence at trial indicated that DCYF developed numerous case plans and prepared many referrals for the mother to address her mental-health issues. However, the mother's failure to cooperate fully repeatedly undermined these efforts. The mother also argues on appeal that DCYF failed to make reasonable efforts towards reunification because it neglected to arrange for adequate visitations with her son. The evidence presented to the court, however, supports the trial justice's contrary conclusion. The mother's own volatile conduct and her continued refusal to address her own mental-health problems disrupted several visitations between the mother and her son and eventually led to the suspension of all visitation.

In sum, we are unable to conclude that the trial justice was clearly wrong in finding that the mother was unfit to parent Ryan. The mother's mental illness and her inability or unwillingness to cooperate with recommended services rendered her unable to parent her son. Despite her assertions to the contrary, the evidence adduced at trial established that DCYF's efforts to reunify mother and son were reasonable and substantial, and the trial justice properly so found. Based upon the foregoing, we deny and dismiss the mother's appeal and affirm the Family Court's judgment.