In re RAYMOND C. et al.

No. 98–350–Appeal.

Supreme Court of Rhode Island.

May 15, 2000.

Thomas J. Corrigan, Jr., Providence, Frank P. Iacono, Jr., for Plaintiff.

Paula Rosin, Kelly Monteiro, Joseph Victor Smith, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this case, the respondent mother appeals from a Family Court decree terminating her rights to her four children.[1] She contends that the trial justice erred in finding that the Department of Children, Youth and Families (DCYF) made reasonable efforts to reunify her with her children as required by G.L.1956 § 15–7–7(a)(3). The case came before a single

---

1. The father's parental rights also were termi-    nated, but he has not appealed.

justice of this Court, who directed the parties to appear and show cause why the issues raised in her appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and hearing the arguments of counsel, we are of the opinion that no such cause has been shown, and we proceed to resolve her appeal at this time.

On March 17, 1997, this Court upheld a Family Court decree finding that the respondent's four children were sexually abused and neglected by both parents. *See In re Jessica C.,* 690 A.2d 1357 (R.I. 1997).[2] Before that initial decree, a DCYF social worker had provided separate case plans for the parents. The respondent's case plan issues included: an understanding of the causes and effects of sexual abuse; learning to keep the children safe; parenting; and, cooperation with DCYF to meet the children's emotional needs. After the sexual abuse disclosures by the children, sexual abuse offender treatment was added to the respondent's case plan.[3] Subsequently, DCYF filed a petition to terminate the rights of both parents, pursuant to § 15–7–7(a)(3).[4] After hearing and reviewing the evidence, a trial justice of the Family Court granted the petition.

The respondent contends here on appeal that DCYF was unreasonable in its efforts to reunify her with her children when it failed to provide her with any means of transportation to attend her sexual abuse treatment, failed to fund the treatment program, referred her to a program that would necessarily expose her to criminal liability by requiring her to admit to sexual abuse, and failed to direct her children's treatment programs towards reunification.

■ "A Family Court justice's findings are entitled to great weight and will not be disturbed absent a showing that the trial justice was clearly wrong or that material evidence was overlooked or misconceived." *In re Nicole B.,* 703 A.2d 612, 615 (R.I.1997). "Consequently we examine the record to determine whether any legally competent evidence exists to support the trial justice's findings." *In re Kelly S.,* 715 A.2d 1283, 1288 (R.I.1998). "[B]efore the state may permanently sever the rights of a parent in his or her natural children, the state must prove by clear and convincing evidence that the parent is unfit." *In re Nicole B.,* 703 A.2d at 615.

Section 15–7–7(b)(1) requires DCYF to make reasonable efforts to reunite the parent with the child "[i]n the event that the petition is filed pursuant to subsection (a)(1), (a)(2)(i), or (a)(2)(iii) * * *," but it is silent with respect to subsection (a)(3). Pursuant to § 15–7–7(a)(3) the court must find by clear and convincing evidence that "the parents were offered or received services to correct the situation which led to the child being placed." This Court need not address whether the language of subsection (a)(3) requires DCYF to make "reasonable efforts" in fulfilling its obligations, because the record of this case supports the trial justice's finding that DCYF did in fact engage in reasonable efforts to achieve reunification.

■ " 'Reasonable efforts' is a subjective standard subject to a case-by-case analysis, taking into account, among other things, the conduct and cooperation of the parents." *In re Ryan S.,* 728 A.2d 454, 457 (R.I.1999) (per curiam) (quoting *In re Nicole B.,* 703 A.2d at 618). "[O]nce a parent has been adjudicated unfit, the bal-

---

2. For a recitation of the facts leading to the present appeal, *see In re Jessica C.,* 690 A.2d 1357 (R.I.1997).

3. Visitation by the parents was suspended by the Family Court early in 1994 at the suggestion of the children's therapists and because the children did not want to be with them.

4. We note that sexual abuse constitutes conduct that is of a cruel or abusive nature; consequently, DCYF could have brought the petition pursuant to G.L.1956 § 15–7–7(a)(2)(ii). That section specifically exempts DCYF from the requirement that it engage in reasonable efforts to preserve or reunify a family.

ance shifts so that the 'best interests of the child outweigh all other considerations.'" *In re Nicole B.*, 703 A.2d at 615 (quoting *In re Kristen B.*, 558 A.2d 200, 203 (R.I. 1989)).

The record reveals that all four of the respondent's children were treated for sexual abuse. Although they had made progress, initially, Jessica was found to be a terrified and traumatized child, Heather was angry and had problems with "boundaries," and Raymond was anxious, insecure and frightened. At the time of trial, Jeffrey was still being treated for post-traumatic stress syndrome. In addition, evidence was presented that the children did not wish to visit their parents, and the children's therapists unanimously agreed that reunification should not occur.

The respondent, however, has consistently and categorically denied that she or her brothers ever sexually abused her children. Indeed, she was discharged from treatment in Brockton, Massachusetts, because of her denial of sexual abuse and her lack of empathy for her children. At trial, the respondent testified that it would not matter how many therapists she might see, she would never admit sexual abuse, and that "I am not admitting to abuse because I am not jeopardizing my life and my children's life." She further testified that she did not believe that her children ever had been sexually abused because they would have told her and that the reason for her sons' behavioral problems was that they did not want to be away from their mother. She denied that either of her daughters even had behavioral problems.

On February 3, 1998, the trial justice entered his decision rejecting the respondent's assertion that DCYF did not exert reasonable reunification efforts because it did not provide transportation and financial help to pay for treatment. He found that she had been referred to, and attended, several sexual abuse counseling sessions, but that she had been discharged from the treatment because of her denial and lack of empathy. He found that she never followed through with treatment despite the fact that "[b]efore any other programs or referrals could be made, the [respondent], first and foremost had to face the reality of the [first trial] Court's findings and engage in sexual offender treatment." The trial justice, recognizing, as he must, the children's best interests, found that they "were so traumatized and damaged in their biological home that any attempt at reunification would have been problematical." He concluded that neither parent had ever made even a minimal effort at reunification.

After reviewing the record, we discern more than ample evidence therein that supports each of the trial justice's findings, and we cannot say that he erred in terminating the respondent's parental rights. Based upon the foregoing, the respondent's appeal is denied and dismissed. The decree of the Family Court terminating her parental rights is affirmed. The papers of this case may be remanded to the Family Court.