**In re LARA F. et al.**

**No. 99–94–Appeal.**

Supreme Court of Rhode Island.

May 24, 2000.

Frank P. Iacono, Jr.—CASA, Thomas J. Corrigan, Jack D. Pitts, Johnston, Mary Jude Nagle—DCYF, for plaintiff.

Charles Greenwood, Catherine A. Gibran, Providence, Frances K. Munroe, Paula Rosin, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on the appeals of Adelina Semedo (Adelina or mother), Francisco Semedo (Semedo), and Bernard Fayehun (Fayehun) from a decree of the Family Court granting the petitions of the Department of Children, Youth and Families (DCYF) to terminate any and all legal rights of Adelina in her children, Lara F. (Lara), Gabrielle S. (Gabrielle),[1] and Francisco S. (Francisco); of Semedo in his children, Gabrielle and Francisco; and of Fayehun in his child, Lara. The parties were directed to appear and show cause why the issues raised in these appeals should not be summarily decided. After hearing the arguments of counsel and examining the memoranda

---

1. We note that Gabrielle was referred to as "Gabriella" in the documents in this case. However, because the child's name is listed as "Gabrielle" on her birth certificate, that is the spelling we will use in this opinion.

submitted by the parties, we are of the opinion that cause has not been shown. Therefore, we shall decide the case at this time.

### Facts and Procedural History

This unfortunate case of child abuse and neglect began nine years ago, in May 1991, when DCYF received a call through its Child Abuse Hotline that two-month-old Gabrielle (born March 30, 1991, to Adelina and Semedo) had suffered a spiral fracture to her left humerus. The Child Abuse and Neglect Tracking System (CANTS) unit indicated the case for lack of supervision and bone fracture, but nevertheless, Gabrielle was sent home. A few months later, on July 11, 1991, Lara (born November 16, 1989, to Adelina and Fayehun) was brought into the emergency room by Adelina for treatment of a four-day-old second-degree burn on her leg, which Adelina reported was caused by Lara walking into a hot iron that had been placed on the floor. Although CANTS investigated, it did not indicate the case.

A few days later, on July 15, 1991, the Pawtucket Police Department responded to a report of a child standing on a window sill of a third-floor apartment. After forcing their way into the locked apartment, officers found nineteen-month-old Lara alone in a bedroom that had been blocked by a cardboard box nailed to the doorway. The police took Lara into protective custody, but before they could leave the house, Adelina and Semedo, Adelina's boyfriend at the time, returned home with their daughter Gabrielle. It appeared that the couple had been gone from the home for at least thirty minutes, yet the mother stated to police that it was not a "big deal" to leave Lara at home alone. Both Lara and Gabrielle were examined by a physician and placed with DCYF. Thereafter, Adelina was ordered to participate in an evaluation, and a parenting aide was provided.[2] On July 30, 1991, Lara and Gabrielle were returned home; Adelina met with the par-

ent aide worker approximately thirteen times in September and October of that year. At Adelina's request, the case was thereafter closed by a judge of the Family Court.

Unfortunately, DCYF's involvement in the case was far from over. On May 17, 1994, three-year-old Gabrielle was seen at the Rhode Island Hospital Pediatric Clinic for a hard bump on her head; she was later diagnosed with a skull fracture. On May 26, 1994, DCYF was notified that Gabrielle had been admitted to Hasbro Children's Hospital (Hasbro) for new bumps on her head. The nurse practitioner at Hasbro expressed numerous concerns about the child's health and safety and placed a seventy-two-hour hold on Gabrielle. Thereafter, Francisco (born February 27, 1993, to Adelina and Semedo) and Lara were transported to Hasbro and examined by a physician. Concerning Lara's condition, the physician reported that the four-and-a-half-year-old had an old scar on her right leg, which was from the burn reported in July 1991; she had a two-month-old scar on her forehead, which Adelina reported was from an iron that fell onto Lara; a fresh bruise on her cheek, which Adelina said occurred at school, a rash in her groin area, and she was hyperactive. All those things gave rise to concerns about appropriate mother-child interaction. The physician reported that fifteen-month-old Francisco had a scar across his forehead, which Adelina said was caused by a blow from another child, and he was suffering from a severe diaper rash that appeared to be at least several days old. The doctor placed both Lara and Francisco on a seventy-two-hour hold, and admitted Francisco to the hospital as a result of vomiting and diarrhea. Lara, Gabrielle, and Francisco all were placed in DCYF foster care. Thereafter, DCYF indicated both Adelina and Semedo for Gabrielle's brain damage and skull fracture. Further, DCYF indicated the

---

2. It appears that although Semedo was or-    dered to participate, he did not do so.

parents for cuts, bruises, and welts on all three children.

On March 25, 1996, following a trial on the merits, a justice of the Family Court found Lara to have been neglected and abused by her mother, Adelina, and Gabrielle and Francisco were found to have been neglected and abused by their mother, Adelina, and their father, Semedo. As to Fayehun, the trial justice found that although he may not have been able to assist Lara emotionally, physically, or financially due to a "very serious psychosis," while Fayehun was "alive and well this child was being subjected to extreme social deprivation * * * and subject[ed] to physical abuse * * * and that [it was] his responsibility as a father to have prevented that from happening," and therefore she found Lara to have been neglected and abused by Fayehun. All three children were committed to the care, custody, and control of DCYF at that time.

Thereafter, on June 14, 1996, DCYF filed Involuntary Termination of Parental Rights Petitions pursuant to G.L.1956 § 15–7–7(a)(3)[3] to terminate the legal rights of each parent to his or her respective child or children. A trial was held before a justice of the Family Court, who, on November 24, 1998, granted all three petitions. Adelina, Semedo, and Fayehun filed timely appeals. Further facts will be provided as necessary to address the issues raised in these appeals.

### Standard of Review

■ When reviewing cases involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the trial justice's findings. *In re Ryan S.*, 728 A.2d 454, 457 (R.I.1999). "Such findings are entitled to great weight, and this Court will not disturb them on appeal unless the findings are clearly wrong or the trial justice misconceived or overlooked material evidence." *Id.* (citing *In re Kristen B.*, 558 A.2d 200 (R.I.1989)).

### Discussion

■ On appeal, all three parents argued that DCYF failed to make reasonable efforts to reunify them with their children. We have held that "reasonable efforts" under § 15–7–7(a)(3) "is a subjective standard subject to a case-by-case analysis, taking into account, among other things, the conduct and cooperation of the parents." *In re Nicole B.*, 703 A.2d 612, 618 (R.I.1997). Our review of the record of this case indicates that legally competent evidence exists to support the trial justice's finding with respect to DCYF's reasonable efforts in reunifying these parents with their children. The trial justice was presented with evidence that DCYF developed numerous case plans and made many referrals for all three parents. Each case plan identified a goal of reunification and addressed the issues of cooperating with recommended treatments suggested by an evaluation and of developing and using parenting skills appropriately. However, Semedo failed to cooperate with DCYF and flatly refused to sign releases of information that were essential preconditions to Semedo's receiving an evaluation and further treatment, undermining DCYF's efforts to counsel, educate, and eventually

---

**3.** General Laws 1956 § 15–7–7 provides, in pertinent part:

"**Termination of parental rights.**—(a) The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court, by clear and convincing evidence, finds as a fact by clear and convincing evidence that:
" * * * *

"(3) The child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided further that there is not a substantial probability that the child will be able to return to the parents care within a reasonable period of time considering the child's age and the need for a permanent home."

reunite Semedo with his children. Additionally, Adelina and Fayehun were shown to suffer from a host of serious mental and emotional problems that do not lend themselves to rehabilitation, and therefore could not be overcome by any further efforts on the part of DCYF.[4] For these reasons, we are satisfied that the trial justice was not clearly wrong, nor did he misconceive or overlook material evidence, when he determined that DCYF made reasonable efforts to reunify these parents and to prevent or eliminate the need for removing the children from the home.

Next, both Semedo and Fayehun argued that the trial justice erred in *sua sponte* taking judicial notice of the transcript of the trial justice's decision and findings from the commitment trial. Semedo argued that judicial notice of the transcript gave the state the advantage of facts and prior findings and judicial conclusions. Likewise, Fayehun argued that the trial justice erroneously considered the findings from the prior proceeding (before which he was unrepresented by counsel) to support his decision to grant the termination petition.

Rule 201(b) of the Rhode Island Rules of Evidence provides that, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is * * * (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." This Court has held that "a court may take judicial notice of its own records including issues and decisions in a prior proceeding involving the same parties." *In re Michael A.,* 552 A.2d 368, 369 (R.I.1989). This includes the findings of a trial justice that support a judicial decision or decree.

■ Further, we note that although he took judicial notice of the transcript, the trial justice stated that, "since in this case this particular decision doesn't appear to add or subtract anything from the decree itself I don't intend to give [it] any weight, and I'll make my decision based on the evidence in the case together with the decree itself * * *." Therefore, because the trial justice read the transcript of the decision but declined to consider it in deciding the case before him, we need not consider whether the taking of judicial notice prejudiced the parties.

### Conclusion

For the foregoing reasons, we deny the appeals and affirm the decree of the Family Court. The papers in the case may be remanded to the Family Court.

---

4. During three sessions in August and September of 1994, Adelina was evaluated by John Parsons, Ph.D., on referral by DCYF, to assess her emotional and cognitive functioning and mental status and to determine what type of counseling efforts would be needed. Doctor Parsons testified at trial that he diagnosed Adelina with borderline intellectual functioning (she had a full scale I.Q. of 73, somewhere between mild mental retardation and low average skills) and a personality disorder with borderline and dependent features. Doctor Parsons testified that individuals with this type of diagnosis tend to have limited insight and questionable judgment, they tend to involve themselves in relationships that are often not meaningful, they tend to be distrustful and resentful of others, and they tend to be particularly resistant to treatment and change.

Fayehun was evaluated by Dr. Parsons in February 1995, to assess his emotional and cognitive functioning and mental status and to determine what type of counseling efforts would be needed. Doctor Parsons made a diagnosis of schizophrenia, paranoid type, with borderline general intelligence. Doctor Parsons expressed concerns in regard to Fayehun because he has a major mental illness and is in a state of denial about his condition; his problems of adjustment are long-standing and chronic in nature and not amenable to significant change; he has questionable insight and judgment; he has a history of domestic violence and is in denial about this situation; and records indicate that he has led a very nomadic lifestyle and had no contact with Lara since she was six months old.