**In re ANTHONY M.**

**No. 99–489–Appeal.**

Supreme Court of Rhode Island.

June 15, 2001.

Joseph A. Abbate, Providence, Thomas J. Corrigan, Jr., Washington Crossing, PA, Patricia J. Petrella, Cranston, For Plaintiff.

Paula Rosin, Providence, For Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on May 17, 2001, pursuant to an order directing both parties to appear and show cause why the issue raised in this appeal should not be summarily decided. Kimberly Mastrofine (respondent or moth-

er) has appealed from the decree of a Family Court justice terminating her parental rights to her son Anthony, born on June 22, 1993. After hearing the arguments of counsel and reviewing the record and the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore, we shall decide the issue raised on appeal at this time.

The Department of Children, Youth, and Families (DCYF or department) first became involved with this family on May 4, 1994. The Providence police reported that they had received a call from respondent at midnight, saying that her child was missing. The respondent had left her ten-month-old son, Anthony, with a man about whom she knew nothing other than his first name. When Anthony was not returned to her, respondent, unable to locate the unidentified man, called the police. The child was found and ultimately returned to his mother later that same day. Although this was the department's first contact with Anthony, respondent was seventeen years old at the time of Anthony's birth and was herself a DCYF-committed child. She had been living independently with in-home parent services since July 1993. During the period immediately following the initial DCYF contact, respondent's housing was unstable and she frequently disappeared for days at a time, leaving Anthony with caretakers of questionable ability.

In June 1994, respondent was evicted from a friend's apartment and was alleged to be using illegal drugs. During that time, respondent was discharged from the St. Mary's Parent Aide Program. She subsequently was placed in the Welcome Arnold Shelter, an adult facility. Shortly thereafter, respondent left the shelter and absconded with her young son. On July 1, 1994, the department removed Anthony from his mother's care and he was placed in a non-relative foster home. Anthony has remained in the custody and care of DCYF since that time. Marilyn Peltier (Ms. Peltier), a caseworker at DCYF, began working with this family in August 1994.[1] Initially, Ms. Peltier concentrated on finding adequate housing for respondent and getting her involved in a substance abuse treatment program, one that dealt with multidrug use. Toward the end of October 1994, Ms. Peltier assisted respondent in securing an apartment on Charles Street in Providence. DCYF paid the initial rent and the security deposit.

Ms. Peltier provided weekly, unsupervised visits with respondent and her son while the mother was living in the apartment on Charles Street. However, within six months of respondent's move to that apartment, she had left two jobs and was evicted for failing to pay rent. The respondent then began sharing apartments with a series of roommates, and consistently failed to provide Ms. Peltier with sufficient information to enable her to conduct background checks on these roommates to ensure that Anthony would be in a safe environment when he was with his mother. In the next few months, the mother either resided with friends or was homeless. In March 1995, the department planned to return Anthony to his mother's custody, but was unable to do so because of respondent's failure to maintain adequate housing.

In December 1995, respondent participated in a parent/child evaluation. Pursuant to that evaluation, several recommendations were made with respect to the

---

1. Laurie Conte (Ms. Conte), the first caseworker to work with this family, received the case in June 1994, but Ms. Conte left the department shortly thereafter and the case was given to Ms. Peltier.

mother. Those recommendations were that respondent continue with her substance abuse treatment and be subjected to toxicology screens, continue the use of prescribed medication to combat depression, address her sexual abuse issues through counseling, and participate in a group for battered women in an effort to develop assertiveness skills especially in dealing with men. It was further recommended that respondent complete a parenting course. The respondent failed to address any of these recommendations.

Five case plans were prepared by the department aimed at reunification of this family, four of which had been signed by the mother. The objectives of these case plans required respondent to obtain and maintain safe, stable housing, demonstrate knowledge of child development and changing needs, as well as the ability to meet those needs; and maintain a lifestyle free of drugs and alcohol. Specifically, the case plans called for respondent to secure housing that met health and safety standards, without living with anyone involved in drug or alcohol abuse, maintain a legal source of income and budget money to pay rent and related expenses and inform DCYF of her address at all times. To assist in achieving the goals set out in this plan, the department offered the mother help with finding an apartment that met health and safety standards, advocating on her behalf if problems arose with her landlord, completing DCYF and criminal background checks on potential roommates, and assisting with the initial rent and security deposit. The goals of these case plans never were realized. On September 12, 1996, DCYF filed a petition to terminate respondent's parental rights to Anthony.

On August 3, 1998, a justice of the Family Court terminated respondent's parental rights, having found that, pursuant to G.L. 1956 § 15–7–7(a)(3), the allegations against her had been proven by clear and convincing evidence and concluding that she was unfit to parent Anthony. In a written decision, the trial justice found that Anthony had been in the care or custody of DCYF for more than twelve months and that there was not a substantial probability that he would be able to return to his mother's care within a reasonable period considering his age and his need for a permanent home.[2] The trial justice further found that the department had rendered reasonable efforts in its attempt to reunify mother and son. The trial justice found that DCYF offered the mother services to correct the situation that had led to the placement, funded an apartment for respondent, arranged and funded counseling and drug treatment programs and provided visits with the child. The mother, however, failed to heed the advice of the counselors and declined the other offered services. Further, the trial justice found that the termination of the mother's parental rights was in Anthony's best interest. The respondent has appealed.

### Discussion

On appeal, the mother has raised one issue. The respondent contended that the trial justice erred in terminating her parental rights to her son, Anthony, in that the department failed to show that she was unfit at the time of trial and failed to demonstrate that it was unlikely that Anthony could return to her within a reasonable period. We deem this claim to be without merit.

2. At the time of the termination, Anthony was five years old and had not resided with his mother in over four years.

When considering a petition for the termination of parental rights, the Family Court must find by clear and convincing evidence that DCYF made reasonable efforts to reunite parent and child, and, that notwithstanding those efforts, the parent is unfit to care for the child. *See In re Ryan S.*, 728 A.2d 454, 457 (R.I.1999). A trial justice's determinations with respect to a finding of unfitness will be accorded great weight and will not be overturned unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *See In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989).

We are satisfied that in finding respondent unfit the trial justice did not overlook or misconceive material evidence, nor was he clearly wrong. The record in this case is replete with legally competent evidence supporting the trial justice's findings. Throughout the department's involvement with this family, the mother demonstrated a fundamental unwillingness and/or inability to participate in the plethora of services provided to her. Significantly, respondent was unable to secure safe and stable housing for any length of time. When she did have an apartment or a house, it was often with a roommate DCYF considered inappropriate or about whom DCYF was unable to investigate because respondent refused to provide the department with the necessary information. The mother also presented drug and alcohol problems and past sexual abuse issues that severely affected her parenting abilities. The respondent refused to avail herself of any services offered by DCYF to help her deal with these problems.

The respondent argued that the trial justice overlooked the fact that at the time of the termination hearing she had made significant progress and, she contended, that although she may have been an unfit parent before, at the time of trial she was living in a stable relationship with a caring husband and was responsible for the day-to-day care of her husband's young son. The respondent, however, failed to offer any verifiable evidence relative to the lifestyle improvements that she alleged she achieved. Although such progress is commendable, we are cognizant of the fact that respondent failed and/or refused to complete the case plans set forth by DCYF. Further, to terminate a parent's rights to his or her child, there must be a finding that that parent is unfit. The trial justice made such a finding in this case. We cannot say that a mother with such serious and chronic problems that clearly pose a risk of relapse can ignore DCYF's requirements and expect the Court to accept her own representations about her rehabilitation.

Anthony was removed from the respondent's care at age one; he is now eight years old and has been in the same pre-adoptive, non-relative foster home since early 1995. The respondent made no effort to change her ways to regain custody of her son until he was five years old, and even then, she never engaged in treatment or counseling and failed to produce verifiable proof that any real progress had been made. Since the time that Anthony was removed from her care, the respondent has lived in eight different apartments, two shelters, a home for unwed mothers and had been incarcerated. "When the welfare of a child is concerned, the department and the court have the duty to request compliance with services offered and the completion of programs to be certain that respondents have, in fact, addressed their problems." *In re Michael F.*, 665 A.2d 880, 882 (R.I.1995). The trial justice in this instance was entitled to draw the reasonable conclusion that the efforts made by the respondent in this case were insufficient and long delayed and that the

termination of her parental rights was in Anthony's best interest.

For the aforementioned reasons, the respondent's appeal is denied and dismissed. The judgment appealed from is affirmed and the papers of this case may be remanded to the Family Court.