**In re NATASHA M.**

**No. 2001–93–Appeal.**

Supreme Court of Rhode Island.

June 11, 2002.

Frank P. Iacono, Jr.; Thomas J. Corrigan, Jr., Paula Rosin, Providence.

Chester R. Wilkie, III.

**O R D E R**

This case came before the Supreme Court on April 15, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be decided summarily. The respondent-mother, Elisa P. (mother or respondent) is before the Court on appeal from a Family Court decree terminating her parental rights[1] to her daughter Natasha M., pursuant to G.L.1956 § 15–7–7(a)(3).[2] After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are satisfied that cause has not been shown. Therefore, this appeal will be decided summarily.

When reviewing a decree involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the findings of the trial justice. *In re Jennifer R.*, 667 A.2d 535, 536 (R.I.1995); *In re Kristen B.*, 558 A.2d 200, 205 (R.I. 1989). We have long held that these findings are entitled to great weight, and will not be disturbed on appeal unless clearly wrong or, if in making those findings, the trial justice overlooked or misconceived material evidence. *See In re Christina V.*, 749 A.2d 1105, 1111 (R.I.2000).

Natasha was born prematurely on September 20, 1997, weighing less than two pounds. She was hospitalized for her first three months of life and has subsequently been diagnosed with significant hearing loss and cerebral palsy. Before Natasha's release from the hospital, the Department of Children, Youth, and Families (DCYF or department) filed a petition alleging dependency due to mother's inability to provide adequate housing with such basic amenities as electricity, telephone service and heat. Natasha was committed to the care, custody and control of the department on January 21, 1998, based upon admissions of drug dependency by both parents.

Since 1998, mother has entered into five case plans with DCYF, with the primary goal of reunifying Natasha with her mother. In each case plan, mother was required to maintain a drug free lifestyle through continued substance abuse treatment, create a safe and stable home environment and learn and appreciate Natasha's special needs. Although the trial justice declined to hold that mother's substance abuse problem continued, he found that DCYF had established, by clear and convincing evidence, that mother presented a threat to the child as evidenced by

---

1. Natasha's father, John M. (father), had his parental rights terminated by default at the hearing.

2. Section 15–7–7(a)(3) provides that the court shall terminate the parental rights to a child if:

    "[t]he child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time, considering the child's age and the need for a permanent home * * *."

her inability to protect herself from Natasha's father. Evidence was presented at trial that mother had left the father in October 1999, after a series of domestic abuse incidents. DCYF subsequently discovered that the father had been abusing mother for three years. Mother initially obtained a restraining order against father, but she allowed it to lapse and, by November 1999, mother was again residing with father. In late November 1999, respondent once again left father due to his physical abuse. She moved in with her parents; however, mother's own history with DCYF indicates that her father is an alleged sexual offender. The department secured shelter placement for mother at a Woman's Center where she resided for two weeks before returning to live with father.

Throughout the department's involvement with the family, mother has left father a total of six times. In October 2000, the department secured housing for mother in a residential home for women in abusive relationships, however, mother lost her placement after she delayed her entry to spend time with a sick aunt. The hearing to terminate mother's parental rights was held the following November.

This Court has held that a determination of the best interests of a child encompasses "the right of a minor child to reasonable care and maintenance, freedom from abuse or neglect, and the right to be given an opportunity to spend the remainder of his or her childhood in a family setting in which the child may grow and thrive." *In re Stephanie*, 456 A.2d 268, 271 (R.I.1983) (quoting *In re David*, 427 A.2d 795, 801 (R.I.1981)). The evidence presented in this case clearly supports the hearing justice's determination that mother is unfit. Mother consistently failed to provide a safe and secure home where Natasha can live in a nurturing environment free from the threat of physical abuse. Although we recognize that mother was the victim of systematic abuse, the question before us is not whether mother is at fault for the situation in which she finds herself, but rather, whether the termination of respondent's parental rights serves the best interests and welfare of the child. An environment in which mother's own safety is in constant jeopardy is certainly not a home where her child is safe.

On appeal, mother argues that the department did not make reasonable efforts at reunification. We disagree. We have previously stated that "[w]hen considering the termination of parental rights, the Family Court justice must find by clear and convincing evidence that DCYF has made reasonable efforts to reunite parent and child, and that notwithstanding those efforts, the parent is unfit." *In re Shaquille*, 736 A.2d 100, 101 (R.I.1999) (mem.). Whether the department's efforts are reasonable will be determined from the "particular facts and circumstances of each case." *In re Kristen B.*, 558 A.2d at 203. Mother specifically argues that the department should have provided her with rental assistance so that she could live independently from father. The record, however, is clear. The department made three separate attempts to provide mother with safe transitional housing. Although the department is responsible for making these reasonable efforts, DCYF does not guarantee success and should not be burdened "with the additional responsibility of holding the hand of a recalcitrant parent." *In re Kristen B.*, 558 A.2d at 204.

Despite the services provided by the department, Natasha remained in the care and custody of the department for well over twelve months. Mother's erratic and unstable living environment is convincing proof that Natasha would not be returned to her within a reasonable period of time.

We are therefore satisfied that Natasha's best interests require the termination of mother's parental rights and we uphold the decision of the hearing justice.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court is affirmed and the papers in this case are remanded to the Family Court.