In re JASON L. et al.

No. 2001–166–Appeal.

Supreme Court of Rhode Island.

Nov. 22, 2002.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent-mother, Elise S. (respondent), appeals from a Family Court decree terminating her parental rights to all but the youngest of her seven children. This case came before the Supreme Court for oral argument on October 1, 2002, following an order directing the parties to appear to show cause why the issues raised by this appeal should not be summarily decided. Having reviewed the record and the parties' briefs, and having considered the oral arguments, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. For the reasons indicated below, we affirm the decree of the Family Court justice.

The respondent's six children who are subject to these proceedings, were born to different fathers. Juan S., also known as "Chino" (Chino), is the father of the youngest child involved in these proceed-

ings.[1] Since at least 1997, Chino and respondent have been involved in a "tumultuous and abusive" relationship. At oral argument, respondent's counsel acknowledged that, as of that date, respondent and Chino were married but living separately. Chino has subjected respondent and at least two of her children to physical abuse. One of those children testified *in camera* that Chino had beaten him with a belt when he was "in trouble" and that respondent knew of those beatings. Additionally, in 1997, a Family Court justice found that five of respondent's "children had unexplained bruises" and one of those children (not the child who testified *in camera*) "had bruising consistent with belt marks and stated that 'Chino' * * * was the perpetrator * * *."

The Department of Children, Youth and Families (DCYF) first became involved with this family in January 1997 after learning that Chino had beaten respondent's third-born child. A no-contact order was issued against Chino, and on January 28, 1997, DCYF filed neglect and abuse petitions against respondent. At that point, respondent and Chino did not have any children together. At her arraignment, respondent denied the charges, and the children were placed in the temporary custody of DCYF. After a hearing on February 21, 1997, the abused child was returned to respondent's home on the condition that the no-contact order issued against Chino continue in full force and effect. The respondent, however, allowed the order to lapse when she failed to appear at a scheduled hearing.

On March 13, 1997, respondent allowed Chino into her home. Eight days later DCYF obtained authorization to locate and detain five of respondent's children "using

any means it deemed expedient." However, DCYF was unable to locate respondent and her children until April 2, 1997. By the end of 1997, all five children were found neglected and were committed to the care, custody and control of DCYF. Thereafter, respondent bore two children with Chino; the oldest of which was found neglected and committed to the care, custody and control of DCYF.

Between January 1997 and March 2000, DCYF prepared eight case plans for respondent and her children. The goal of all the plans was either to maintain the children's placement in the home or to reunify the children with respondent. The case plans assigned various tasks aimed at remedying a number of familial problems. The most important aspect of all the plans was the need to keep Chino away from respondent and her children. Additionally, DCYF referred respondent to several agencies to help her with psychological and housing issues.

On March 15, 2000, DCYF petitioned the Family Court to terminate respondent's parental rights to the six children pursuant to G.L.1956 § 15–7–7(a)(3). Section 15–7–7(a)(3) provides that the Family Court shall terminate a parent's rights if it finds by clear and convincing evidence that the "child has been placed in the legal custody or care of * * * [DCYF] for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time * * *." After hearing six days of testimony, a Family Court justice made the requi-

---

1. Chino is also the father of respondent's seventh child, who is not the subject of these proceedings.

site findings under § 15–7–7(a)(3) and further found that DCYF made reasonable efforts to encourage and strengthen the parental relationship. Accordingly, the Family Court justice granted the petition and terminated respondent's parental rights.

■ "It is well established that when reviewing a Family Court decree terminating a parent's rights, 'the trial justice's findings are entitled to great weight and shall not be disturbed unless the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence. * * * Consequently, we examine the record to determine whether any legally competent evidence exists to support the trial justice's findings.' " In re Chaselle S., 798 A.2d 892, 895 (R.I.2002) (quoting In re Kelly S., 715 A.2d 1283, 1288 (R.I.1998)).

■ The respondent contends on appeal that DCYF failed to "make reasonable efforts to reunify [her] with her family" before initiating termination proceedings. Although she fails to cite the source of DCYF's allegedly unfulfilled obligations, the reasonable efforts language used by respondent is consistent with the language used to describe the duty imposed upon DCYF under § 15–7–7(b)(1). Section 15–7–7(b)(1) requires that DCYF make "reasonable efforts * * * to encourage and strengthen the parental relationship * * *" in termination proceedings brought on the grounds of neglect under § 15–7–7(a)(1) or certain instances of parental unfitness under § 15–7–7(a)(2). However, as this Court noted in In re Raymond C., 751 A.2d 281, 282 (R.I.2000), § 15–7–7(b)(1) is silent with respect to termination proceedings such as this in which the grounds for termination are alleged solely under § 15–7–7(a)(3).

Before terminating a parent's rights under § 15–7–7(a)(3), the Family Court justice must find by clear and convincing evidence that "the parents were offered or received services to correct the situation which led to the child being placed." In this case, even if DCYF was required to make "reasonable efforts" under § 15–7–7(b)(3) as argued by respondent, the record supports the Family Court justice's finding that DCYF did undertake reasonable efforts to achieve reunification. A finding of "reasonable efforts" is based on a subjective standard and is "subject to a case-by-case analysis, taking into account, among other things, the conduct and cooperation of the parents." In re Ryan S., 728 A.2d 454, 457 (R.I.1999) (quoting In re Nicole B., 703 A.2d 612, 618 (R.I.1997)).

The record reveals that DCYF offered a variety of services to respondent to help her resolve the number of problems plaguing her family, including domestic violence, child protection, steady housing and employment, and general parenting skills. DCYF prepared case plans for respondent in both Spanish and English. The plans provided specific tasks for respondent to complete that would have provided her with the tools necessary to properly care for her children.

To address the issue of domestic abuse, DCYF offered services to respondent and Chino. DCYF discussed with respondent on no fewer than twenty-five occasions the necessity of keeping Chino away from her children. Furthermore, a DCYF caseworker actively assisted her in obtaining a temporary restraining order against Chino, which respondent allowed to lapse when she failed to appear at a scheduled hearing. Thereafter, respondent allowed Chino to be in the presence of her children. Not only did respondent continue her relationship with Chino in violation of her case plans, but she also had two children with him. Through her actions, respondent repeatedly has demonstrated her

unwillingness to keep her children away from the man that abused her and them. As the Family Court justice stated: "[respondent] has chosen her lover over her children."

DCYF also referred respondent to at least ten different agencies and professionals to address her problems. The respondent, however, did not keep her scheduled appointments. Additionally, DCYF offered assistance to respondent to help her obtain suitable housing for herself and her children. A case worker not only contacted realtors and other organizations on respondent's behalf, but also accompanied her on an appointment to view a possible apartment. Moreover, DCYF eventually paid the first month's rent and security deposit for respondent's apartment. Furthermore, DCYF provided assistance to respondent in obtaining a Section 8 certificate, which respondent eventually lost.

"DCYF does not guarantee success and should not be burdened 'with the additional responsibility of holding the hand of a recalcitrant parent.' " *In re Natasha M.*, 800 A.2d 430, 431 (R.I.2002) (mem.) (quoting *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989)). DCYF's efforts in this case were more than reasonable. Here, respondent's half-hearted attempt at cooperating with DCYF's efforts was the main impediment to reunification.

■ In an effort to impose a heightened duty on DCYF, respondent claims that she suffers from Battered Women's Syndrome (BWS) and therefore, DCYF had an affirmative duty to keep Chino away from her and her children. Specifically, she argues that because she suffered from BWS she was "highly unlikely, in January of 1997, to effectively stand up to [Chino] and keep him away from her and the children." Accordingly, she argues, that DCYF's attempts to remedy the situation in this case were essentially meaningless.

This Court has recognized BWS as "a mental or emotional condition that can affect women and * * * ha[s] certain legal consequences." *McMaugh v. State*, 612 A.2d 725, 733 (R.I.1992). However, a party claiming to suffer from BWS must prove its existence by a preponderance of the evidence. *See id.* at 733–34. Here, there is evidence that respondent was involved in a relationship with Chino in which she suffered severe physical and emotional abuse. However, as DCYF points out in its brief, respondent offered no evidence at trial to establish that she suffered from BWS. The respondent's failure to introduce such evidence so that the Family Court justice could properly determine its effect on DCYF's duty constitutes a waiver of that issue. *See State v. Breen*, 767 A.2d 50, 57 (R.I.2001).

We are of the opinion that there is sufficient evidence to support the Family Court justice's findings that DCYF complied with its statutory duties as imposed by § 15–7–7(a)(3). Accordingly, we deny and dismiss the appeal and affirm the judgment of the Family Court, to which we return the papers in the case.