**In re WILLIAM R., et al.**

**No. 2001–261–Appeal.**

Supreme Court of Rhode Island.

Jan. 9, 2004.

Frank P. Iacono, Jr., Esq., Thomas J. Corrigan, Jr., Esq., for Plaintiff.

Kelly Monteiro, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The respondent-mother, Cecelia Tamayo (mother), appeals from a Family Court decree terminating her parental rights to her two sons: William (born June 19, 1991) and Mark (born May 31, 1997). After the court entered the decree on November 22, 2000, she filed a timely notice of appeal with this Court. Ordered to show cause why we should not decide this appeal summarily, the parties have not done so. Accordingly, we proceed to decide the appeal at this time.

After reviewing the evidence, the trial justice found that even though the mother loved her children, she was "unfit by reason of conduct or conditions seriously detrimental to the child[ren] such as emotional illness, mental illness, [and] mental deficiency * * * of such duration as to render it improbable" that she will be in a position to care for them for an extended period. In addition, he found that the children were in the legal custody of the Department of Children, Youth, and their Families (DCYF) for "more than the statutory period," and that DCYF had done "all that it could reasonably do to reunify" the mother with her children. He concluded that the mother's parental rights should be terminated.

■ The mother first argues that the trial justice erred in finding that DCYF established through testimony at trial that mental illness made her unfit to care for her children. She admits that she suffers from depression and paranoid-personality disorder, but argues that the state failed to introduce clear and convincing evidence showing that she was unable to safely parent her children. She argues that no evidence unequivocally indicated that she could not provide the basic necessities of life with appropriate guidance. Finally, she points to the positive and appropriate behaviors she has mastered, noting that she missed only a few appointments to visit with her children, maintained her own apartment, and kept her children and herself well-groomed.

■ When reviewing a Family Court decree terminating a parent's rights, we accord great weight to the trial justice's findings, which we will not disturb on appeal unless the trial justice was clearly wrong or overlooked or misconceived material evidence. *In re Jason L.*, 810 A.2d 765, 767 (R.I.2002) (per curiam). In examining the record, we seek "to determine whether any legally competent evidence exists to support the trial justice's findings." *Id.* (quoting *In re Chaselle S.*, 798 A.2d 892, 895 (R.I.2002)).

In *In re Samson P.*, 773 A.2d 889, 892 (R.I.2001) (per curiam), we noted that G.L. 1956 § 15–7–7(a)(2) provides that a "'parent is unfit by reason of conduct or conditions seriously detrimental to the child.'" In addition, "'§ 15–7–7(a)(2) sets forth a non-exclusive list of conduct or conditions'" that a court should consider when determining a parent's unfitness. *In re Samson P.*, 773 A.2d at 892. Under "§ 15–7–7(a)(2)(vii), the court may * * * consider behavior or conduct exhibited by the parent 'that is seriously detrimental to the child [and] of a duration that renders it improbable for the parent to care for the child for an extended period of time.'" *In re Samson P.*, 773 A.2d at 892.

Here, the trial justice's decision was supported by ample evidence indicating that the mother's mental illness and emotional problems rendered her unfit to care for her children. Several professionals testified that the mother possessed inappropriate parenting skills and lacked the basic competence required to parent her children. Also, several specialists treated her for a paranoid personality disorder, which, they acknowledged, was especially difficult to treat. The trial justice, therefore, did not err because the mothers mental illness, coupled with her need for continued specialized care, demonstrated her unfitness under § 15–7–7(a)(2). *See In re Samson P.*, 773 A.2d at 892.

■ Citing § 15–7–7(b)(1), the mother next argues that DCYF failed to make reasonable efforts to strengthen her relationship with her two boys. She contends that DCYF failed to consider her mental limitations in developing a plan to improve the situation, failed to consult with her in

developing a plan for services, failed to make suitable arrangements for visitation, failed to provide services to resolve problems that prevented reunification, and failed to inform her about the health and development of her children.

A finding of "reasonable efforts" is based on a parent-specific standard and is "subject to a case-by-case analysis, taking into account, among other things, the conduct and cooperation of the parents." *In re Jason L.*, 810 A.2d at 767 (quoting *In re Ryan S.*, 728 A.2d 454, 457 (R.I.1999) (per curiam)). Recently, in *In re Christopher B.*, 823 A.2d 301, 308 (R.I.2003), we reiterated that efforts to encourage and strengthen the parental relationship should vary depending on the capacities of the parents in question. When a parent is cognitively impaired, as was the case in *In re Christopher B.*, reasonable services should address such an impairment. *Id.* at 313. Here, unlike the situation in *In re Christopher B.*, DCYF attempted on several occasions to address the mother's specific mental limitations.

This case is more analogous to *In re Ryan S.* There, the mother, who was diagnosed with a paranoid-personality disorder, argued that DCYF failed to make reasonable efforts toward reunification by failing to consult with her and to cooperate with her in planning the services it would provide her. *In re Ryan S.*, 728 A.2d at 456. In deciding to terminate parental rights, the trial justice found that the mother refused to accept mental-health services and demonstrated an unwillingness to work toward reunification. *Id.* at 457. Despite DCYF's efforts to provide her with medical treatment and medication, the mother "consistently objected to and/or refused to comply with these services." *Id.*

Similarly, in *In re Joseph S.*, 788 A.2d 475, 478 (R.I.2002) (per curiam), the trial justice found that although the mother suffered from a serious mental illness, DCYF expended reasonable efforts to assist her in coping with her illness and in achieving reunification with her children. In affirming the Family Court's decision to terminate parental rights, we held that although DCYF was responsible for making reasonable efforts to reunite the parents with their children, "DCYF does not guarantee success and ought not to be burdened 'with the additional responsibility of holding the hand of a recalcitrant parent.'" *Id.* (quoting *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989)).

Here, we are persuaded that DCYF properly engaged in reasonable efforts to strengthen and encourage this mother's relations with her two children. Like the mother in *Ryan S.*, this mother refused to cooperate with DCYF, even though DCYF provided her with many referrals and went to great lengths to help her cope with her mental issues. Despite DCYF's efforts, this mother refused to sign her social worker's proffered case plans, missed appointments with her clinical therapist without canceling first, and refused to take medication prescribed by her psychiatrist. In short, the mother's intractability, not DCYF's failure to make reasonable efforts, led to the decree terminating her parental rights.

As part of her reasonable-efforts argument, the mother next asserts that DCYF failed to provide adequate visitation with her children, suggesting that this contributed to her inability to reunite with them. This argument is without merit because all the evidence at trial indicated that DCYF provided the mother with ample visitation opportunities. Moreover, the trial justice did not consider the lack of sufficient visitation as a contributing factor in terminating her parental rights.

Based upon the evidence at the hearing, we conclude that the trial justice did not err. The case law and the evidence introduced at the hearing support the trial justice's decision. Therefore, we affirm the decree terminating the mother's parental rights.